632 So.2d 1018 (1994)
In re ADVISORY OPINION TO the ATTORNEY GENERAL  RESTRICTS LAWS RELATED TO DISCRIMINATION.
No. 82674.
Supreme Court of Florida.
March 3, 1994.
Robert A. Butterworth, Atty. Gen. and Louis F. Hubener, III, Asst. Atty. Gen., Tallahassee and Scott L. Thomas, Gen. Counsel, American Family Ass'n Law Center, Tupelo, MS, and G. Donovan Conwell, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, on behalf of American Family Political Committee, Sponsor, for petitioner.
Chesterfield H. Smith, Holland & Knight, Miami, William E. Adams, Jr., Lambda Legal Defense & Education Fund, Fort Lauderdale, Rosemary Wilder, Gay & Lesbian Lawyers Ass'n, Fort Lauderdale, Suzanne Goldberg, Lambda Legal Defense & Educ. Fund, New York City, and James Fox Miller, Miller, Schwartz & Miller, Hollywood, for Florida Public Interest Law Section, et al., Interested Parties.
Robert W. Lee, Smith & Hiatt, P.A., Fort Lauderdale, for Broward County Hispanic Bar Ass'n, Inc., et al., Interested Parties.
Nina E. Vinik, Miami, for American Civil Liberties Union Foundation of Florida, Inc., Interested Party.
Robert F. Reece, President, Clearwater, for Florida Ass'n of Community Relations Professionals, Interested Party.
Carol A. Licko, Thomson, Muraro, Razook & Hart, P.A., Miami, for Parker D. Thomson and Arthur J. England, Jr., Interested Parties.
*1019 Vernon T. Grizzard, Staff Counsel, FEA/United, Tallahassee, Stephan A. Meck, Gen. Counsel, Public Employees Relations Com'n, Tallahassee and Pamela L. Cooper, Gen. Counsel, FTP-NEA, Tallahassee, joins in the brief of amicus curiae for Florida Educ. Association/United.
Anthony R. Martin, Palm Beach, Interested Party.
McDONALD, Justice.
In accordance with article IV, section 10 of the Florida Constitution and section 16.061, Florida Statutes (1993), the Attorney General has petitioned this Court for an advisory opinion on the validity of an initiative petition. In response, we issued an order permitting interested parties to file briefs and we heard oral arguments on the validity of the proposed amendment. We have jurisdiction pursuant to article V, section 3(b)(10) of the Florida Constitution.
The petition seeks to amend article I, section 10 of the Florida Constitution, which provides:
No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed.
The petition would amend the above provision in the following manner:
1) Article I, section 10 of the Constitution of the State of Florida is hereby amended by:
(a) inserting "(a)" before the first word thereof and,
(b) adding a new subsection "(b)" at the end thereof to read:
(b) The state, political subdivisions of the state, municipalities or any other governmental entity shall not enact or adopt any law regarding discrimination against persons which creates, establishes or recognizes any right, privilege or protection for any person based upon any characteristic, trait, status, or condition other than race, color, religion, sex, national origin, age, handicap, ethnic background, marital status, or familial status. As used herein the term `sex' shall mean the biological state of either being a male person or a female person; `marital status' shall mean the state of being lawfully married to a person of the opposite sex, separated, divorced, widowed or single; and `familial status' shall mean the state of being a person domiciled with a minor, as defined by law, who is the parent or person with legal custody of such minor or who is a person with written permission from such parent or person with legal custody of such minor.
(2) All laws previously enacted which are inconsistent with this provision are hereby repealed to the extent of such inconsistency.
(3) This amendment shall take effect on the date it is approved by the electorate.
Our advisory opinion is limited to determining whether the proposed amendment complies with article XI, section 3 of the Florida Constitution and section 101.161, Florida Statutes (1993).[1] Article XI, section 3 of the Florida Constitution requires that a proposed amendment "shall embrace but one subject and matter directly connected therewith." The Attorney General concluded that "on its face," the amendment appeared to satisfy the single-subject requirement. Looking beyond the surface, however, we find that the proposed amendment touches upon more than one subject and therefore violates the single-subject provision of the constitution.
Florida's state constitution reflects a consensus on the issues and values that the electorate has declared to be of fundamental importance. When voters are asked to consider a modification to the constitution, they should not be forced to "accept part of an initiative proposal which they oppose in order *1020 to obtain a change in the constitution which they support." Fine v. Firestone, 448 So.2d 984, 988 (Fla. 1984). The single-subject rule is a constitutional restraint placed on proposed amendments to prevent voters from being trapped in such a predicament. Thus, to comply with the single-subject requirement, the proposed amendment must manifest a "logical and natural oneness of purpose." Id. at 990.
To ascertain whether the necessary "oneness of purpose" exists, we must consider whether the proposal affects separate functions of government and how the proposal affects other provisions of the constitution. Id. In support of the validity of the proposed amendment, the American Family Political Committee argues that discrimination is the sole subject of the proposed amendment. This Court has emphasized, however, that "enfolding disparate subjects within the cloak of a broad generality does not satisfy the single-subject requirement." Evans v. Firestone, 457 So.2d 1351, 1353 (Fla. 1984). In Fine, we disapproved a proposed amendment that characterized the provisions as affecting the single subject of revenues because it actually affected the government's ability to tax, government user-fee operations, and funding of capital improvements through revenue bonds. Similarly, we find that the subject of discrimination in the proposed amendment is an expansive generality that encompasses both civil rights and the power of all state and local governmental bodies. By including the language "any other governmental entity," the proposed amendment encroaches on municipal home rule powers and on the rulemaking authority of executive agencies and the judiciary. In addition, the amendment modifies article I, section 2 of the Florida Constitution, dealing with the basic rights of all natural persons, and also affects article I, section 6 of the Florida Constitution, dealing with the right of employees to bargain collectively.
The proposed amendment also violates the single-subject requirement because it enumerates ten classifications of people that would be entitled to protection from discrimination if the amendment were passed. The voter is essentially being asked to give one "yes" or "no" answer to a proposal that actually asks ten questions. For example, a voter may want to support protection from discrimination for people based on race and religion, but oppose protection based on marital status and familial status. Requiring voters to choose which classifications they feel most strongly about, and then requiring them to cast an all or nothing vote on the classifications listed in the amendment, defies the purpose of the single-subject limitation. Therefore, the proposed amendment fails the single-subject requirement of article IV, section 3 of the Florida Constitution.
To be placed on the ballot, the ballot summary also must be legally sufficient under section 101.161, Florida Statutes (1993). The proposed ballot title and summary provide:

LAWS RELATED TO DISCRIMINATION ARE RESTRICTED TO CERTAIN CLASSIFICATIONS
Restricts laws related to discrimination to classifications based upon race, color, religion, sex, national origin, age, handicap, ethnic background, marital status or familial status. Repeals all laws inconsistent with this amendment.
Subsection 101.161(1) provides, in pertinent part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot... . The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
The purpose of section 101.161 is "to assure that the electorate is advised of the true meaning, and ramifications, of an amendment." Askew v. Firestone, 421 So.2d 151, 156 (Fla. 1982). This Court essentially previews the ballot summary to determine if the chief purpose of the amendment is explained *1021 with sufficient clarity. Although we are wary of interfering with the public's right to vote on an initiative proposal, Smith v. American Airlines, 606 So.2d 618 (Fla. 1992), we are equally cautious of approving the validity of a ballot summary that is not clearly understandable.
The critical issue concerning the language of the ballot summary is whether the public has "fair notice" of the meaning and effect of the proposed amendment. In Smith v. American Airlines, we held that the proposed ballot summary concerning taxation of leaseholds of government-owned property was defective because it failed to explain that post-1968 leases would be taxed at a different rate than pre-1968 leases. We also noted in Smith that, although voters are expected to inform themselves about the details of a proposed amendment, the ballot title and summary are expected to be "accurate and informative." Id. at 621.
Both the summary and the text of the amendment omit any mention of the myriad of laws, rules, and regulations that may be affected by the repeal of "all laws inconsistent with this amendment." The summary also fails to state that the proposed amendment would curtail the authority of government entities. Instead, the summary merely states that the proposed amendment "restricts laws related to discrimination." Thus, a voter might conclude from the summary that the amendment would restrict existing laws when in fact the amendment would restrict the power of governmental entities to enact or adopt any law in the future that protects a group from discrimination, if that group is not mentioned in the summary. The omission of such material information is misleading and precludes voters from being able to cast their ballots intelligently. Advisory Opinion to the Attorney General  Limited Political Terms in Certain Elective Offices, 592 So.2d 225 (Fla. 1991). We cannot approve an ambiguity that will in all probability confuse the voters who are responsible for deciding whether the amendment should be included in the state constitution.
Accordingly, we hold that the initiative petition and ballot summary should be stricken from the ballot for failure to comply with the legal requirements of article XI, section 3 of the Florida Constitution and section 101.161, Florida Statutes (1993).
It is so ordered.
OVERTON, SHAW, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs with an opinion.
BARKETT, C.J., recused.
KOGAN, Justice, concurring.
I must confess that this case gives me great pause. One of the bedrock principles of our democracy is that all people will have access to the legal processes provided by our Constitution. Art. I, § 1, Fla. Const. The guarantee extends to every Floridian, not merely to those people with whom I or another judge personally may agree; and the guarantee obviously includes the use of the initiative process. For that reason alone, I must stress that this Court has an absolute obligation to be entirely blind to the particular political agenda of those who have proposed this or any other initiative.
Moreover, while the initiative process may exist for many purposes, I think it improbable to say it does not exist under any circumstances for the people to modify Florida's guarantees of fundamental rights,[2] either by broadening or lessening them. Few aspects of a constitution affect the people more directly than the guarantees of constitutional rights. If the initiative process exists for any purpose, it certainly must exist for this one, provided the initiative is narrowly and properly framed and contains a fair ballot summary.
Put another way, the present case to a significant degree involves a larger issue than what is first apparent. That issue is allowing all of our citizens access to the tools of participatory democracy, including the initiative process, no matter what political philosophy or issue may be at stake. These tools are the people's right, though subject to *1022 definite limitations based on sound public policy. In that sense, I agree that the sponsors of the present initiative could lawfully propose some type of amendment to limit civil rights, though their effort obviously would be ineffective if it contravened the dictates of the United States Constitution.
What leads me to join the majority here, however, is the extremely broad collateral impact this initiative may have, if enacted. I do not accept all of the arguments raised by the opponents, but the latter nevertheless have raised serious and substantial claims that this initiative will do things that are not explained to the people and that deal with subjects far afield of the initiative's purported subject matter. These include a possible violation of federal fair housing guidelines that could result in a loss of federal revenue to the State of Florida, the probable automatic repeal of statutes protecting collective bargaining activities of Florida union members,[3] and the possible repeal of veterans' preference laws, among others.[4]
Whatever else may be said of the initiative process, it was not created as a means by which multiple changes can be made in state government or law. Unlike other initiatives in the past, this one is too broadly worded and has too many possible collateral effects that are not and probably could not be adequately explained to the people within existing constraints. These possible collateral effects are too diverse to meet the single-subject requirement and are not mentioned in the ballot summary, even in a general sense. This initiative, in other words, tries to do too much and reflects draftsmanship that has not adequately considered all the collateral effects, which could seriously disrupt other important aspects of Florida government and law. Voters relying on the initiative's text and the ballot summary clearly would be misled in this sense.
It is beyond question that the initiative process does not exist as a method for yanking away or substantially altering part of Florida's legal machinery regardless of the consequences to the rest of our governmental system. The various parts of the Constitution require a harmony of purpose both internally and within the broader context of the American federal system and Florida law itself. Any initiative that tends to undermine that harmony most probably will violate the single-subject and ballot summary requirements, because the initiative is proposing to do something that may have a broad and unstated "domino effect."
As an extreme example, the people could not lawfully propose an initiative that said, "The legislature is hereby abolished." Such an initiative's brevity might suggest that only a single subject exists; and a ballot summary might seem to be adequate if it simply reiterated what the proposal said. However, the collateral consequences of such an amendment undoubtedly would violate the United States Constitution's requirement that every state must have a republican form of government,[5] U.S. Const., art. IV, § 4, meaning that Florida's entire governmental structure could be rendered unconstitutional and hence chaotic by the five short words of the amendment. Moreover, the domino effect on Florida law and government undoubtedly would be catastrophic, because the state would be left without a legislative organ and no means of raising or appropriating revenue.[6]
*1023 As another example, an initiative could be proposed that said, "The State and its organs shall only employ males of Anglo-Saxon descent." It is true that this Court could not remove this hypothetical initiative from a vote solely because it would be invalid under the federal Constitution and statutes. Advisory Opinion to the Attorney General  Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla. 1991). However, we could not lawfully ignore the very serious repercussions such an initiative would have on other subjects  its domino effect.
Our case law already has established that serious undisclosed collateral effects of an initiative can be reason enough to remove it from the ballot. Florida League of Cities v. Smith, 607 So.2d 397, 399 (Fla. 1992).[7] In this hypothetical, repercussions could include the possible loss of federal funding, punitive suits initiated against the state by the United States Justice Department, and other federal sanctions that would be likely if such an initiative ever were approved.
For that reason, I believe this last hypothetical initiative contains at least two subjects  the obvious one of restricting state employment to a particular class, and the unstated one of subjecting Florida to punitive federal sanctions.
The voters should never be put in a position of voting on something that, while perhaps appearing to do only one thing, actually will also result in other consequences that may not be readily apparent or desirable to the voters. That would be a classic violation of the single-subject requirement.[8]Id.
In this sense, I believe the Court is required to consider all issues  including some questions of federal law  for the purpose of determining whether a single-subject violation exists and whether the ballot summary is adequate. A proposed amendment obviously has more than one subject and violates the ballot-summary requirement if it may have one or more unstated effects on the operation of Florida law or government either internally or in the context of the American federal system or existing Florida law, beyond the obvious subject matter of the amendment.
Let me put this in the context of the present case. We are not concerned here with whether the obvious subject matter of this initiative (restricting some types of civil rights legislation) is constitutional; we are concerned only with whether the initiative has other effects on Florida law or government that fall under dissimilar subject matters, thereby violating the single-subject requirement. Moreover, if these different effects are not properly explained in the initiative, there would be a ballot summary problem as well. We elsewhere have so noted in considering alleged undisclosed collateral effects of another initiative.[9]Id. at 399.
On both counts, the present initiative fails for the reasons I have described above. Id. In no sense does the language of this initiative or its ballot summary notify voters of the possible effects on federal housing funding, *1024 collective bargaining laws, and veterans' preference laws, among others. In that sense, the initiative violates the single-subject and ballot-summary requirements, in addition to the reasons stated by the majority.
Moreover, my examples illustrate what I believe to be an inherent limitation on the initiative process itself  one required by the Constitution's plain language and sound public policy. There is much the people may do by way of initiative, but they may not lawfully propose a measure that has a serious potential to disrupt the harmonious operation of Florida law and government either internally or within the context of the American federal system or existing Florida law. Such a failing is obvious on the face of this initiative and for that reason it may not lawfully go on the ballot.
However, I reach this conclusion only because of the present initiative's overbroad and unstated effects. I do not believe the Constitution forbids the people to propose limited initiatives that either broaden or restrict civil rights. What the Constitution does require is that all such civil rights initiatives must be narrowly framed, must not involve undisclosed collateral effects, and must not have the potential to disrupt other aspects of Florida law or government beyond the subject of the amendment itself. When such overbreadth exists, the single-subject requirement necessarily is violated; and the ballot-summary requirement is violated to the extent the initiative does not or cannot explain its own domino effect.
For these reasons, I concur with the majority.
NOTES
[1] The opponents of the proposed amendment have urged this Court to consider all of the facial constitutional issues that may be implicated by the petition. We decline to do so. We do not have jurisdiction to rule on the constitutionality of the proposed amendment when the case challenging the proposed amendment originates in this Court upon a petition of the Attorney General filed pursuant to section 16.061, Florida Statutes (1993). We have original jurisdiction to determine only whether the proposed amendment complies with the technical legal requirements concerning the single-subject rule and the clarity of the ballot title and summary. Art. IV, § 10, Fla. Const.; § 101.161, Fla. Stat. (1993); see Advisory Opinion to the Attorney General  Limited Marine Net Fishing, 620 So.2d 997 (Fla. 1993).
[2] Most of the fundamental rights are set forth in Florida's Declaration of Rights. Art. 1, Fla. Const. The present initiative proposes to amend article 1, section 10 of the Constitution.
[3] The Florida Public Employees Relation Commission in its brief to this Court has expressed its belief that portions of Florida's collective bargaining laws may be inadvertently affected by the present initiative. PERC has special expertise in this area, because it is entrusted with the administration of substantial portions of Florida's employment laws.
[4] I also agree with the majority's conclusions as to the disparate subjects contained within this initiative. The ones I have identified are in addition to those named by the majority.
[5] The term "republican" is used here in its older sense, meaning a government by representatives chosen by the people. See Black's Law Dictionary 1303 (6th ed. 1991).
[6] In other words, this hypothetical initiative actually is attempting a constitutional revision, which may not be attempted by initiative. The single-subject requirement is the means by which a permissible initiative is distinguished from an impermissible revision. Compare art. XI, § 3, with art. XI, § 4, Fla. Const. Constitutional revisions are possible only through a separate mechanism created by the Constitution, which also can be invoked through a citizen petition drive. However, once sufficient petitions are collected, a revision may only be drafted and proposed by a statewide convention of delegates that will be specially elected for this purpose. Art. XI, § 4, Fla. Const. The latter requirement reflects a policy that a revision, as opposed to an initiative, must be more carefully drafted and thus requires a more elaborate process for development, so that a constitutionally sound and harmonious product will result.
[7] The opinion in Florida League of Cities v. Smith, 607 So.2d 397 (Fla. 1992), is directly on point. There, we confronted a situation in which a proposed amendment arguably would trigger a partial repeal of Florida's homestead exemption law, which gives homeowners substantial property tax relief. We noted in Florida League of Cities that the ballot summary made no mention of the possibility of such a repeal. Then we stated that, if the repeal were triggered, the ballot summary would be defective because it "makes no mention of the possible loss of a portion of the homestead exemption." Id. at 399. In other words, undisclosed collateral effects can create a ballot summary problem. Relief was denied in Florida League of Cities only because we found that the repealer actually would not be triggered. Id. at 401.
[8] Of course, I am not saying that the present initiative is so extreme as my hypothetical examples, only that it has the same basic flaw.
[9] We have even held that, after an advisory opinion is issued, the initiative still may be challenged by mandamus as to any issue not previously litigated. Florida League of Cities v. Smith, 607 So.2d 397, 399 (Fla. 1992).