718 So.2d 798 (1998)
ADVISORY OPINION TO THE ATTORNEY GENERAL RE TERM LIMITS PLEDGE.
No. 92162.
Supreme Court of Florida.
October 1, 1998.
*800 Robert A. Butterworth, Attorney General, and Louis F. Hubener, III, Assistant Attorney General, Tallahassee, for Presentor.
Joseph W. Little, Gainesville, for Floridians for Congressional Term Limits and Rick Bruns, Respondents.
PER CURIAM.
The Attorney General has requested that this Court review a proposed citizen initiative amendment to the Florida Constitution (hereinafter "proposed amendment"). We have jurisdiction. See art. IV, § 10; art V, § 3(b)(10), Fla. Const.
The proposed amendment was circulated by an organization known as Floridians for Congressional Term Limits (hereinafter "proponent"). The ballot title for the proposed amendment is "TERM LIMITS PLEDGE." The summary for the proposed amendment provides:
Directs Secretary of State to permit but not require candidates for the United States Congress to pledge to serve a maximum of 3 terms if elected to the House of Representatives and 2 terms if elected to the Senate and to indicate on all primary, special and general election ballots which candidates have taken the pledge and which have taken and broken the pledge. Affects powers of Secretary of State under Article IV.
The full text of the proposed amendment reads as follows:
BE IT ENACTED BY THE PEOPLE OF FLORIDA THAT: ARTICLE VI, FLORIDA CONSTITUION [SIC], IS HEREBY AMENDED AS FOLLOWS:
Add this section to Article VI on the day after it is approved by the electors of Florida:
Section 7. Term Limits Pledge (a) The Secretary of State shall permit but not require any candidate for the United States Congress to submit to the Secretary of State an executed copy of the Term Limits Pledge set forth in subsection (b) of this section up until 15 days prior to the Secretary of State's certification of the ballot in order for the ballot information set forth in subsections (c) and (d) of this section to be included on that ballot.
(b) The Term Limits Pledge will be as set forth herein and will incorporate the applicable language in [] for the office the candidate seeks:
I voluntarily pledge not to serve in the United States [House of Representatives more than 3 terms][Senate more than 2 terms] after the effective date of this provision and authorize the Secretary of State to notify the voters of this action by placing the applicable ballot information "Signed TERM LIMITS pledge to serve no more than [3 terms][2 terms]" or "Broke TERM LIMITS pledge" next to my name on every election ballot and in all state sponsored voter education material in which my name appears as a candidate for the office for which the pledge refers.
------------ --------
Signature Date
(c) The Secretary of State shall place on every election ballot and in all state sponsored voter education material the applicable ballot information, "Signed TERM LIMITS pledge to serve no more than [3 terms][2 terms]" next to the name of any candidate for the office of United States Representative and United States Senator who has ever executed the Term Limits Pledge except when subsection (d) of this section applies.
(d) The Secretary of State shall place on every election ballot and in all state sponsored voter education material the ballot information, "Broke TERM LIMITS pledge" next to the name of any candidate who at any time executes the Term Limits Pledge and thereafter qualifies as a candidate for a term that would exceed the number of terms set forth in the Term Limits Pledge.
(e) For the purpose of this section, service in office for more than one-half of a term shall be deemed service for a term.
(f) The Secretary of State shall implement this section by rule.

*801 (g) If any portion of this section is held invalid for any reason, the remaining portion to the fullest extent possible shall be severed from the void portion and given the fullest force and application.
This Court issued an order permitting interested parties to file briefs on the proposed amendment, and one party did sothe proponent. While no briefs were filed by interested parties opposing the proposed amendment, the Attorney General expressed his concern that:
While the ballot summary refers to the powers of the Secretary of State under Article IV, it does not identify Article IV as an article of the Florida Constitution. More troubling, however, is that the text of the proposed amendment creates a new section under Article VI, not Article IV. There is no reference in the proposed amendment to Article IV.
Letter from Robert A. Butterworth, Attorney General of the State of Florida, to The Honorable Gerald Kogan, Chief Justice, and Justices of the Supreme Court of Florida 4 (Jan. 7, 1998) (on file with Supreme Court of Florida). The Attorney General further noted his concern that the "proposed amendment imposes constitutional duties upon the Secretary of State not presently possessed by that office and creates a mandatory ballot procedure that affects candidates for congressional office." Id. at 6.

JURISDICTION
Our jurisdiction to issue advisory opinions on proposed amendments based on citizen initiative petitions emanates from the Florida Constitution. Specifically, article IV, section 10 of the Florida Constitution provides that "[t]he attorney general shall, as directed by general law," request this Court's opinion "as to the validity of any initiative petition circulated pursuant to Section 3 of Article XI." (Emphasis added.) Article V, section 3(b)(10) further provides that this Court "[s]hall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law." (Emphasis added.) Pursuant to general law, section 16.061(1), Florida Statutes (1997), requires that the Attorney General seek an advisory opinion "regarding the compliance of the text of the proposed amendment or revision with s. 3, Art. XI of the State Constitution and the compliance of the proposed ballot title and substance with s. 101.161."
Accordingly, the scope of our advisory opinions on proposed amendments based on citizen initiative petitions has traditionally been limited to two legal issues: (1) whether the proposed amendment violates the single-subject requirement of article XI, section 3 of the Florida Constitution, and (2) whether the ballot title and summary of the proposed amendment are misleading, in violation of section 101.161(1), Florida Statutes (1997). See Advisory Opinion to the Attorney Gen. re People's Property Rights Amendments, 699 So.2d 1304, 1306 (Fla.1997); Advisory Opinion to the Attorney Gen. re Tax Limitation, 644 So.2d 486, 489-90 (Fla.1994). We have interpreted our jurisdiction to issue advisory opinions in this context as limited to these two considerations.[1]See Advisory Opinion to the Attorney Gen.Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 227 (Fla.1991).

SINGLE SUBJECT
Article XI, section 3 of the Florida Constitution provides in pertinent part that proposed amendments based on citizen initiative petitions "shall embrace but one subject and matter directly connected therewith." The single-subject requirement applies only to the citizen initiative method of amending the constitution because *802 section 3 [citizen initiative] does not afford the same opportunity for public hearing and debate that accompanies the proposal and drafting processes of sections 1, 2, and 4.[[2]] Accordingly, section 3 protects against multiple "precipitous" and "cataclysmic" changes in the constitution by limiting to a single subject what may be included in any one amendment proposal.
Advisory Opinion to the Attorney Gen. re Fish & Wildlife Conservation Comm'n, 705 So.2d 1351, 1353 (Fla.1998).
To comply with the single-subject requirement, a proposed amendment must manifest a "logical and natural oneness of purpose." Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984). This determination requires this Court to consider whether the proposed amendment affects separate functions of government, as well as how it affects other provisions of the constitution. See In re Advisory Opinion to the Attorney Gen. Restricts Laws Related to Discrimination, 632 So.2d 1018, 1020 (Fla.1994). "[T]he possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment." Advisory Opinion to the Attorney Gen.Fee on the Everglades Sugar Prod., 681 So.2d 1124, 1128 (Fla.1996) (quoting Advisory Opinion to the Attorney Gen. re Ltd. Casinos, 644 So.2d 71, 74 (Fla. 1994)). Likewise, "[a] proposal that affects several branches of government will not automatically fail." Fish & Wildlife Conservation Comm'n, 705 So.2d at 1353-54. Rather, "it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test." Id. at 1354.
This proposed amendment affects two articles of the state constitutionarticle IV and article VIneither of which currently grants constitutional recognition to the Secretary of State's election-related powers and duties. Presently, article IV, section 4(b) of the Florida Constitution provides only that "[t]he secretary of state shall keep the records of the official acts of the legislative and executive departments," but grants no involvement or responsibility in elections to the Secretary of State. Article VI, which specifically addresses elections, provides that "elections shall ... be regulated by law." Art. VI, § 1, Fla. Const. Thus, presently the Florida Statutes, not the Florida Constitution, establish the Secretary of State as "the chief election officer of the state." § 97.012, Fla. Stat. (1997).
The proposed amendment grants constitutional recognition to the Secretary of State's election-related powers and duties that have previously been statutory. In Limited Political Terms, we upheld under the single-subject requirement a proposed amendment mandating term limits where "[t]he sole subject of the proposed amendment [was] limiting the number of consecutive terms that certain elected public officers may serve." 592 So.2d at 227. Unlike the proposed amendment in Limited Political Terms, the proposed amendment at issue here not only impacts elections, but also establishes constitutional discretionary authority within the Secretary of State in regard to elections.
However, we do not find that this proposed amendment, even though affecting the constitutional authority of the Secretary of State and affecting more than one provision of the constitution, lacks oneness of purpose, as the constitutional expansion of the Secretary of State's powers is related specifically to the issue of the term limits pledge. It does not substantially alter the functions of multiple branches of government.

BALLOT TITLE AND SUMMARY
Although we do not find that this proposed amendment violates the single-subject requirement of the state constitution, we find a distinct problem with the ballot summary. In order for the public to fully comprehend the contemplated changes of a proposed amendment, section 101.161(1), Florida Statutes (1997), provides in pertinent part that
[w]henever a constitutional amendment... is submitted to the vote of the people, *803 the substance of such amendment ... shall be printed in clear and unambiguous language on the ballot.... The substance of the amendment ... shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
This statute requires that the title and summary be accurate and informative. See Tax Limitation, 644 So.2d at 490. The ballot title and summary must "state in clear and unambiguous language the chief purpose of the measure," Advisory Opinion to the Attorney Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998) (quoting Askew v. Firestone, 421 So.2d 151, 155 (Fla.1982)), and "assure that the electorate is advised of the true meaning, and ramifications, of an amendment." Askew, 421 So.2d at 156; see also Laws Related to Discrimination, 632 So.2d at 1021 (ballot summary must inform of meaning and effect of amendment).
The purpose of the statute is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." Health Care Providers, 705 So.2d at 566 (quoting Fee on Everglades Sugar Prod., 681 So.2d at 1127). "A ballot summary may be defective if it omits material facts necessary to make the summary not misleading." Limited Political Terms, 592 So.2d at 228; see also Askew, 421 So.2d at 158 (Ehrlich, J., concurring). Accordingly, in Fish & Wildlife Conservation Comm'n, this Court struck a ballot summary that did not "explain to the reader" or "sufficiently inform the public" of important aspects of the proposed amendment. 705 So.2d at 1355. Likewise, in Tax Limitation, this Court struck a ballot summary that was devoid of any mention of important consequences of the proposed amendment. 644 So.2d at 495.
On the other hand, we did not strike the ballot summary at issue in Limited Political Terms because we found that
the failure to indicate the current lack of term limits [is not] misleading. This is not a situation in which the ballot summary conceals a conflict with an existing provision. There is no existing constitutional provision imposing a different limitation on terms of office. In effect, this proposed amendment writes on a clean slate. Furthermore, we do not find the lack of reference to the severability provision to be misleading.
592 So.2d at 228. The omissions in this ballot summary are far more critical. This proposed amendment, if approved by the electorate and incorporated into the state constitution, would substantially impact article IV of the Florida Constitution regarding the Secretary of State's powers and duties. However, in this regard, the ballot summary simply states that the proposed amendment affects the powers of the Secretary of State.
The powers that the proposed amendment would bestow on the Secretary of State would not be purely ministerial in nature. Under the proposed amendment, the Secretary of State would have discretion to promulgate rules regarding the implementation of the amendment. Such rules would be necessary to address currently unanswered questions such as whether a candidate who voluntarily took the term limits pledge could thereafter voluntarily repudiate the pledge without ballot repercussions; whether a candidate who has served three terms in the House of Representatives would break the term limits pledge by seeking election to the Senate; whether a Florida candidate's prior service as a United States Representative or Senator from another state would be part of the term limit; or whether the term limits pledge applies only to consecutive terms, or to interspersed terms as well.
The power to answer these and other decisive questions would be, in large part, the power to ultimately determine which candidates would suffer the "Broke Term Limits Pledge" notation next to their name on the ballot.[3] This cuts to the very core of the *804 chief purpose of the proposed amendment to identify on the ballot those candidates who have taken and broken the term limits pledge. The ballot summary fails to inform the public that the Secretary of State would be granted discretionary constitutional powers concerning elections that the Secretary of State presently does not possess. Because the ballot summary is silent as to the constitutional ramifications on, and the discretionary authority vested in, the Secretary of State under the proposed amendment, the ballot summary must fail.
In short, the problem "lies not with what the summary says, but, rather, with what it does not say." Fish & Wildlife Conservation Comm'n, 705 So.2d at 1355 (quoting Askew, 421 So.2d at 156). When the summary of a proposed amendment does not accurately describe the scope of the text of the amendment, it fails in its purpose and must be stricken. For the reasons expressed, we direct that this proposed ballot summary be stricken and the proposed amendment not be placed on the ballot.
It is so ordered.
KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
OVERTON, J., concurs in result only with an opinion.
HARDING, C.J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
OVERTON, Justice, concurring in result only.
I concur in result only because I strongly believe that it is a fraud on the public to indicate that this initiative provision could be properly placed on the ballot if the ballot summary was not misleading. I find this entire provision to be unconstitutional on its face under U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995).
I still adhere to the view that I expressed in Advisory Opinion to the Attorney GeneralLimited Political Terms in Certain Elective Offices, 592 So.2d 225 (Fla.1991), that this Court is
mandated by the Florida Constitution, specifically, article IV, section 10, to consider the validity of an initiative petition that is presented to the voters under article XI, section 3. Article IV, section 10, of the Florida Constitution, states that we should consider "the validity of any initiative petition circulated pursuant to Section 3 of Article XI." Granted, we must consider whether the proposed amendment and the ballot title and summary comply with article XI, section 3, of the Florida Constitution, and section 101.161, Florida Statutes (1989). However, I find that those provisions do not limit our responsibility in considering whether or not the proposed amendment to this constitution meets constitutional requirements of validity under the Constitution of the United States. A reasonable interpretation of article III, section 10, requires a construction that mandates our consideration of this question, particularly in view of the prior case law of this Court.
This Court has previously recognized that we have the responsibility to consider a facial violation of the Constitution of the United States in proposed amendments to our constitution. In Gray v. Winthrop, 115 Fla. 721, 156 So. 270 (1934), and Gray v. Moss, 115 Fla. 701, 156 So. 262 (1934), we considered violations of the United States Constitution before allowing a proposed amendment to our state constitution to be placed on the ballot. In doing so, we stated:
If a proposed amendment to the state Constitution by its terms specifically and necessarily violates a command or limitation of the Federal Constitution, a ministerial duty of an administrative officer, that is a part of the prescribed legal procedure for submitting such proposed amendment to the electorate of the state for adoption or rejection, may be enjoined at the suit of proper parties in order to avoid the expense of submission, when the amendment, if adopted, would palpably violate the paramount law and would inevitably be futile and nugatory and incapable of being made *805 operative under any conditions or circumstances.

Winthrop, 115 Fla. at 726-27, 156 So. at 272. Subsequent to our adoption of the 1968 Constitution, we again acknowledged that responsibility in Weber v. Smothers, 338 So.2d 819, 821 (Fla.1976), stating that the citizens of Florida "have a right to change, abrogate or modify [the Florida Constitution] in any manner they see fit so long as they keep within the confines of the Federal Constitution." To accept the construction of the majority means that we should wait until after the election to address a strictly legal issue. A review at this time, should this legal issue be resolved adverse to the proponents of the amendment, would save both proponents and opponents of the amendment considerable expense and the considerable expense to the state of a futile election. To allow the people to vote and then, if adopted, hold the provision unconstitutional on its face [perpetrates] a fraud on the voting public. I find that both our constitution and case law recognizes our authority to resolve this strictly legal issue now, without further court proceedings.
Id. at 229-30 (Overton, J., concurring in part and dissenting in part).
In my view, it is clearly within our authority to state that a proposed state constitutional initiative is unconstitutional under the United States Constitution. This proposal is unconstitutional on its face and there is no justifiable reason for us not to say so. Our declaration that the proposal is unconstitutional would avoid substantial costs by both proponents and opponents and a perception of the public that they are voting on a valid constitutional provision.
HARDING, Chief Justice, concurring in part and dissenting in part.
I concur with the majority that the proposed citizen initiative amendment does not violate the single-subject requirement of article XI, section 3 of the Florida Constitution. However, I dissent because I believe the proposed amendment complies with the ballot title and summary requirements of section 101.161(1), Florida Statutes (1997).
SHAW, J., concurs.
NOTES
[1] While we do not pass on the constitutionality of inserting a term limits pledge provision in our state constitution, we note that any provision of a state constitution that imposes qualifications on federal offices in addition to the qualifications set forth in the federal constitution is unconstitutional. See U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995); Advisory Opinion to the Attorney Gen. Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 229-33 (Fla.1991) (Overton, J., concurring in part and dissenting in part). Based on Thornton, the term limits provision for federal offices currently in the Florida Constitution, article VI, section 4(b)(5)-(6), would be unconstitutional.
[2] Sections 1, 2, and 4, respectively, provide that amendments to the Florida Constitution may be initiated by legislative proposal, every twenty years by a Revision Commission, or by a constitutional convention.
[3] Such a notation is obviously intended to be, and would be, a negative comment on the candidate at issue, and would potentially adversely affect that candidate's chances of being elected.