POLSTON, J.,
concurring in part and dissenting in part.
I concur with the majority’s conclusion that the initiative in this case does not violate the single-subject requirement. However, because I conclude that the ballot summary is confusing and does not accurately describe the scope of the proposed amendment, I would not approve the initiative for placement on the ballot.
Section 101.161(1), Florida Statutes (2014), provides the following clarity requirements for the ballot summary:
The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure....
The purpose of these requirements is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can *248 cast an intelligent and informed ballot.” Advisory Op. to Att’y Gen. re Term Limits Pledge, 718 So.2d 798, 803 (Fla.1998).
This Court’s review of the validity of a ballot title and summary under section 101.161(1) involves two inquiries:
First, the Court asks whether “the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment.” [Advisory Op. to Att’y Gen. re] Right to Treatment and Rehabilitation for Non-Violent Drug Offenses, 818 So.2d [491, 497 (Fla.2002)]. Second, the Court asks “whether the language of the title and summary, as written, misleads the public.” Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
Advisory Op. to the Att’y Gen. re Fairness Initiative Requiring Leg. Determination That Sales Tax Exemptions & Exclusions Serve a Public Purpose, 880 So.2d 630, 635-36 (Fla.2004). As this Court has explained, “a ballot title and summary cannot ‘fly under false colors’ or ‘hide the ball’ with regard to the true effect of an amendment.” Fla. Dep’t of State v. Slough, 992 So.2d 142, 147 (Fla.2008). “When the summary of a proposed amendment does not accurately describe the scope of the text of the amendment, it fails in its purpose and must be stricken.” Term Limits Pledge, 718 So.2d at 804.
Here, the ballot summary is confusing and does not accurately inform the voter of the true effect of the proposed amendment. For example, the ballot summary states that the proposed amendment “[l]imits or prevents government and electric utility imposed barriers to supplying local solar electricity.” However, this language does not clearly explain to the voter the scope of the limitation to government regulation involved. In fact, the text of the amendment only permits “health, safety and welfare regulations, including, but not limited to, building codes, electrical codes, safety codes and pollution control regulations” if such regulations “do not prohibit or have the effect of prohibiting the supply of solar-generated electricity by a local solar electricity supplier.” Therefore, the proposed amendment would override any state or local health, safety, or welfare regulation if (presumably in the sole judgment of the solar electricity supplier) the regulation would “have the effect of prohibiting the supply of solar-generated electricity.” For example, the Department of Environmental Protection and the water management districts could not enforce laws and regulations designed to protect wildlife habitat, wetlands, and water resources if they would “have the effect of prohibiting” the siting of a local solar electricity generating facility within areas where such protections would apply. Likewise, local governments would be prohibited from enforcing wind resistance ordinances if a solar supplier claimed its facilities could hot economically meet those standards. Even local government land development codes, architectural review board regulations, deed covenants, and condominium and homeowners’ association restrictions would be unenforceable if deemed prohibitively problematic by a solar supplier.
The ballot summary also misleads the voter by stating that the proposed amendment addresses “non-utility” electric providers when, under current law, all electric providers are regulated as public utilities. Specifically, the ballot summary states that “[l]ocal solar electricity supply is the non-utility supply of solar generated electricity from a facility rated up to 2 megawatts to customers at the same or contiguous property as the facility.” The summary does not inform the voter that this would be a change in the law, and the text of the *249 proposed amendment is what redefines “electric utility” to exclude “a local solar electricity supplier.”
By redefining “electric utility,” the proposed amendment removes solar suppliers from the jurisdiction of the Public Service Commission (PSC) and the protections the PSC provides. The PSC is a separate body with comprehensive regulatory authority, and it supervises and regulates public utilities to ensure affordable rates, safe practices, and quality service throughout the State. See ch. 366, Florida Statutes (2014). The ballot summary does not inform the voter that the proposed amendment creates a new and limited class of electricity sellers that would not be subject to PSC regulation with respect to rates, service, or territory. These solar suppliers, unregulated by the PSC, would also (as explained above) be exempt from reasonable health, safety, and welfare regulations if they would “have the effect of prohibiting the supply of solar-generated electricity.” Further, the costs of maintaining the regulated facilities to be ready to serve solar customers when solar power is limited or unavailable will likely be shifted to the remaining customers who do not contract with the unregulated solar suppliers.
Finally, the confusing language in the ballot summary leads the voter to believe that this initiative is about someone who owns a small house or small business with a solar panel on the roof and wants to sell electricity on a small-scale. However, according to the Florida Electric Cooperatives Association, a single local solar generating facility capable of generating 2 megawatts of electricity would span over 12 acres and could serve approximately 714 customers. The ballot summary does not provide notice to the voter that this proposed amendment provides for this scale of completely unregulated electricity generation.
Accordingly, because the ballot summary is confusing and does not convey the scope of the proposed amendment, I would not approve the initiative for placement on the ballot. I respectfully concur in part and dissent in part.