# Supreme Court of Florida

———————

No. SC16-778

———————

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: VOTER CONTROL OF GAMBLING IN FLORIDA.**

———————

No. SC16-871

———————

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: VOTER CONTROL OF GAMBLING IN FLORIDA (FIS).**

[April 20, 2017]

PER CURIAM.

The Attorney General of Florida has requested this Court's opinion as to the validity of an initiative petition circulated pursuant to article XI, section 3, of the Florida Constitution. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const.

"Our review of the proposed amendment is confined to two issues: (1) whether the proposed amendment itself satisfies the single-subject requirement of article XI, section 3, of the Florida Constitution; and (2) whether the ballot title

and summary satisfy the requirements of section 101.161(1), Florida Statutes (201[6]).″ Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions, 132 So. 3d 786, 791 (Fla. 2014).

The proposed initiative petition in this case, Voter Control of Gambling in Florida ("the Initiative"), would require "casino gambling," as defined by the proposal, to be authorized only through the citizens' initiative process. We approve the Initiative for placement on the ballot, concluding that it complies with the single-subject requirement of article XI, section 3, of the Florida Constitution; the title and summary of the Initiative do not affirmatively mislead voters; and the financial impact statement complies with section 100.371, Florida Statutes (2016).

## BACKGROUND

On May 6, 2016, the Attorney General petitioned this Court for an opinion as to the validity of an initiative petition sponsored by Voters in Charge and circulated pursuant to article XI, section 3, of the Florida Constitution. The sponsor submitted a brief supporting the Initiative, while two groups associated with the gaming industry submitted briefs in opposition. The amendment would add the following new section 29 to article X, of the Florida Constitution:

> ARTICLE X, FLORIDA CONSTITUTION, is amended to include the following new section:
> Voter Control of Gambling in Florida.
> (a) This amendment ensures that Florida voters shall have the exclusive right to decide whether to authorize casino gambling in the State of Florida. This amendment requires a vote by citizens'

- 2 -

initiative pursuant to Article XI, section 3, in order for casino gambling to be authorized under Florida law. This section amends this Article; and also affects Article XI, by making citizens' initiatives the exclusive method of authorizing casino gambling.

(b) As used in this section, "casino gambling" means any of the types of games typically found in casinos and that are within the definition of Class III gaming in the Federal Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA"), and in 25 C.F.R. § 502.4, upon adoption of this amendment, and any that are added to such definition of Class III gaming in the future.  This includes, but is not limited to, any house banking game, including but not limited to card games such as baccarat, chemin de fer, blackjack (21), and pai gow (if played as house banking games); any player-banked game that simulates a house banking game, such as California black jack; casino games such as roulette, craps, and keno; any slot machines as defined in 15 U.S.C. [§] 1171(a)(1); and any other game not authorized by Article X, section 15, whether or not defined as a slot machine, in which outcomes are determined by random number generator or are similarly assigned randomly, such as instant or historical racing.  As used herein, "casino gambling" includes any electronic gambling devices, simulated gambling devices, video lottery devices, internet sweepstakes devices, and any other form of electronic or electromechanical facsimiles of any game of chance, slot machine, or casino-style game, regardless of how such devices are defined under IGRA.  As used herein, "casino gambling" does not include pari-mutuel wagering on horse racing, dog racing, or jai alai exhibitions. For purposes of this section, "gambling" and "gaming" are synonymous.

(c) Nothing herein shall be deemed to limit the right of the Legislature to exercise its authority through general law to restrict, regulate, or tax any gaming or gambling activities.  In addition, nothing herein shall be construed to limit the ability of the state or Native American tribes to negotiate gaming compacts pursuant to the Federal Indian Gaming Regulatory Act for the conduct of casino gambling on tribal lands, or to affect any existing gambling on tribal lands pursuant to compacts executed by the state and Native American tribes pursuant to IGRA.

(d) This section is effective upon approval by the voters, is self-executing, and no Legislative implementation is required.

(e) If any part of this section is held invalid for any reason, the remaining portion or portions shall be severed from the invalid portion and given the fullest possible force and effect.

The ballot title for the proposed amendment is "Voter Control of Gambling in Florida." The ballot summary states:

> This amendment ensures that Florida voters shall have the exclusive right to decide whether to authorize casino gambling by requiring that in order for casino gambling to be authorized under Florida law, it must be approved by Florida voters pursuant to Article XI, Section 3 of the Florida Constitution. Affects articles X and XI. Defines casino gambling and clarifies that this amendment does not conflict with federal law regarding state/tribal compacts.

On May 19, 2016, the Financial Impact Estimating Conference forwarded to the Attorney General the following financial impact statement regarding the Initiative:

> The amendment's impact on state and local government revenues and costs, if any, cannot be determined at this time because of its unknown effect on gambling operations that have not been approved by voters through a constitutional amendment proposed by a citizens' initiative petition process.

**STANDARD OF REVIEW**

"This Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and 'has been reluctant to interfere' with 'the right of self-determination for <u>all</u> Florida's citizens' to formulate 'their own organic law.' " <u>Advisory Op. re Use of Marijuana</u>, 132 So. 3d at 794 (quoting <u>Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug</u>

- 4 -

Offenses, 818 So. 2d 491, 494 (Fla. 2002)).  Indeed, this Court's "duty is to uphold the proposal unless it can be shown to be 'clearly and conclusively defective.' " Id. at 795 (quoting Advisory Op. to Att'y Gen. re Fla.'s Amend. to Reduce Class Size, 816 So. 2d 580, 582 (Fla. 2002)).

"When determining the validity of an amendment arising through the citizen initiative process, our inquiry is limited to two legal issues: (1) whether the proposed amendment violates the single-subject requirement of article XI, section 3, of the Florida Constitution; and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes." Id. (citing Advisory Op. re Right to Treatment & Rehab., 818 So. 2d at 494).  We do not address the merits of the proposed initiative.  Id. (citing Advisory Op. re Right to Treatment & Rehab., 818 So. 2d at 494).

## ANALYSIS

### I. Single-Subject Requirement

Article XI, section 3, of the Florida Constitution provides that citizen initiative petitions like the Voter Control of Gambling Initiative at issue in this case "shall embrace but one subject and matter directly connected therewith."  Art. XI, § 3, Fla. Const.  "In evaluating whether a proposed amendment violates the single-subject requirement, the Court must determine whether it has a 'logical and natural oneness of purpose.' "  Advisory Op. to Att'y Gen. re Amend. to Bar Gov't from

Treating People Differently Based on Race in Pub. Educ., 778 So. 2d 888, 891-92 (Fla. 2001) (quoting Advisory Op. to Att'y Gen. re Term Limits Pledge, 718 So. 2d 798, 802 (Fla. 1998)).

This single-subject rule prevents a proposed amendment "from engaging in either of two practices: (a) logrolling; or (b) substantially altering or performing the functions of multiple branches of state government." Advisory Op. re Use of Marijuana, 132 So. 3d at 795 (quoting Advisory Op. to Att'y Gen. re Water & Land Conservation, 123 So. 3d 47, 50-51 (Fla. 2013)). Logrolling, as defined by this Court, is "a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue." Id. (quoting In re Advisory Op. to the Att'y Gen.—Save Our Everglades, 636 So. 2d 1336, 1339 (Fla. 1994)). This Court has previously held that "there is no impermissible logrolling" where "[t]he only subject embraced in the proposed amendment is whether the people of this State want to include a provision in their Constitution mandating that the government build a high speed ground transportation system." Advisory Op. to Att'y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So. 2d 367, 369 (Fla. 2000).

As to the second part of the single-subject analysis, this Court has explained that "[a] proposal that affects several branches of government will not

automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test." Advisory Op. to Att'y Gen. re Fish & Wildlife Conservation Comm'n, 705 So. 2d 1351, 1353-54 (Fla. 1998).

In this case, the Initiative has "a logical and natural oneness of purpose," namely whether voters wish to authorize casino gambling in Florida through the citizens' initiative process, which is outlined in the Florida Constitution. Advisory Op. re Treating People Differently, 778 So. 2d at 892. The other provisions of the Initiative, which define "casino" and "gambling" and provide that the amendment would be self-executing, are directly connected with the Initiative's one purpose. Similarly, in Advisory Opinion to the Attorney General—Fee on Everglades Sugar Production, 681 So. 2d 1124 (Fla. 1996), this Court concluded that the proposal did not violate the single-subject rule because "[t]he imposition of the fee and the designation of the revenue . . . [were] two components directly connected to the fundamental policy of requiring first processors to contribute towards ongoing Everglades restoration efforts." Id. at 1128. The ballot summary at issue in this case explains that the Legislature would retain its authority to regulate and tax any gambling activities and that the amendment does not conflict with federal law regarding state and tribal compacts, which is also connected to the Initiative's purpose. Therefore, the Initiative does not engage in impermissible logrolling.

Additionally, the Initiative does not substantially alter or perform the functions of multiple branches of government. While the amendment restricts the ability of the Legislature to authorize casino gambling through general law, it does not substantially alter the functions or powers of the executive or judicial branches. See Advisory Op. to Att'y Gen. re Term Limits Pledge, 718 So. 2d 798, 802 (Fla. 1998) (holding that the initiative did not substantially alter the functions of multiple branches "even though [it] affect[ed] the constitutional authority of the Secretary of State and affect[ed] more than one provision of the constitution"). Accordingly, we conclude that the Initiative complies with the single-subject requirement of article XI, section 3, of the Florida Constitution.

## II. Ballot Title and Summary

Next, we address whether the proposed amendment will be "accurately represented on the ballot." Advisory Op. re Use of Marijuana, 132 So. 3d at 797 (quoting Armstrong v. Harris, 773 So. 2d 7, 12 (Fla. 2000)). "This requires us to consider two questions: (1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voters of the chief purpose of the amendment; and (2) whether the language of the ballot title and summary, as written, will be affirmatively misleading to voters." Id. Section 101.161(1), Florida Statutes (2016), "governs the requirements for the ballot title and summary of an initiative petition," id., and provides as follows:

- 8 -

The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . . The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.

§ 101.161(1), Fla. Stat. (2016).

These statutory requirements serve to ensure that the ballot summary and title "provide fair notice of the content of the proposed amendment" to voters so that they "will not be misled as to [the proposed amendment's] purpose, and can cast an intelligent and informed ballot." Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers, 705 So. 2d 563, 566 (Fla. 1998) (quoting Advisory Op. to Att'y Gen.—Fee on Everglades Sugar, 681 So. 2d at 1127).

In this case, the ballot title is "Voter Control of Gambling in Florida," and the summary states:

This amendment ensures that Florida voters shall have the exclusive right to decide whether to authorize casino gambling by requiring that in order for casino gambling to be authorized under Florida law, it must be approved by Florida voters pursuant to Article XI, Section 3 of the Florida Constitution. Affects articles X and XI. Defines casino gambling and clarifies that this amendment does not conflict with federal law regarding state/tribal compacts.

Primarily, the ballot title is six words, and the ballot summary is seventy-one words. Therefore, the ballot title and summary comply with the statutory word

limitations.  See § 101.161(1), Fla. Stat. (2016).  We now turn to address the opponents' challenges to the title and summary.

## A. Retroactive Application

The opponents primarily argue that the Initiative should not be placed on the ballot because it is unclear whether, if passed, the amendment would apply retroactively and what effect, if any, the amendment would have on gambling that is currently legal in Florida—including gambling that was previously authorized by general law rather than by citizens' initiative.  However, as the sponsor points out, the opponents' arguments concern the ambiguous legal effect of the amendment's text rather than the clarity of the ballot title and summary.

Opponent Jacksonville Kennel Club cites State v. Lavazolli, 434 So. 2d 321 (Fla. 1983), and Florida Hospital Waterman, Inc. v. Buster, 984 So. 2d 478 (Fla. 2008), for support of its argument that the ballot summary does not properly advise voters whether the Initiative will have any retroactive impact on Florida's current gambling laws.  But, in both of those cases, this Court addressed whether the constitutional amendments at issue applied retroactively after the electorate approved the amendments.  Likewise, we review the clarity of only the ballot title and summary to determine whether the Initiative may be placed on the ballot.  Thus, we do not address whether the amendment would apply retroactively if the Initiative is placed on the ballot and passed by voters, including whether the

- 10 -

Initiative would retroactively affect licenses previously issued pursuant to article X, section 23, of the Florida Constitution and section 551.102, Florida Statutes (2016).

## B. Amendment's Purpose and Effect

As this Court has explained, "a ballot title and summary cannot 'fly under false colors' or 'hide the ball' with regard to the true effect of an amendment." Fla. Dep't of State v. Slough, 992 So. 2d 142, 147 (Fla. 2008) (quoting Armstrong v. Harris, 773 So. 2d at 16). This Court has explained that "the ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters." Advisory Op. to Att'y Gen. re Voluntary Univ. Pre-Kindergarten Educ., 824 So. 2d 161, 166 (Fla. 2002).

Reading together the ballot title and summary of the Initiative, it is reasonably clear that the chief purpose of the Initiative is to make the citizens' initiative process addressed in article XI, section 3, of the Florida Constitution the only means for authorizing casino gambling in Florida.

The other statements in the ballot summary—that the amendment "[a]ffects articles X and XI" of the Florida Constitution and "[d]efines casino gambling and clarifies that this amendment does not conflict with federal law regarding state/tribal compacts"—fairly represent the amendment's actual text and effect. Subsection (b) of the amendment's text contains an extensive definition of what is

considered "casino gambling" for the purposes of the amendment; and, contrary to the opponents' argument, these definitions generally comport with the plain meaning of these words.[1] Subsection (c) of the amendment's text explains that the amendment shall not be construed to affect gambling on tribal lands pursuant to compacts executed under federal law or to affect the ability of the State or tribes to negotiate such compacts under federal law. The text in subsection (c) comports with the ballot summary's brief mention of federal law and tribal compacts. Therefore, the ballot title and summary do not affirmatively mislead the voter or "hide the ball" regarding the amendment.

Furthermore, regarding the opponents' complaint that the summary and title do not detail every possible effect the Initiative could have on gaming in Florida and on tribal lands, this Court has explained that "an exhaustive explanation of the interpretation and future possible effects of [an] amendment [is] not required" in the ballot title and summary. Advisory Op. re Treating People Differently, 778 So. 2d at 899); see Advisory Op. to Att'y Gen. re Standards for Establishing Legislative Dist. Boundaries, 2 So. 3d 175, 186 (Fla. 2009) ("[A] ballot summary

---

1. For example, Webster's Third New International Dictionary Unabridged defines "casino" as "a building or room for gambling," and "gambling" as "the act or practice of betting: the act of playing a game and consciously risking money or other stakes on its outcome." Webster's Third New International Dictionary Unabridged 347, 932 (1993 ed.).

need not (and because of the statutory word limit, often cannot) explain 'at great and undue length' the complete details of a proposed amendment, and some onus falls upon voters to educate themselves about the substance of the proposed amendment." (quoting Advisory Op. re Right to Treatment & Rehab., 818 So. 2d at 498)).

The opponents also argue that the title and summary mislead voters by using the word "control" in the title but "authorize" in the summary. However, when the title and summary are read together, a voter should reasonably understand that the vote is whether to ensure "that Florida voters shall have the exclusive right to decide whether to authorize casino gambling by requiring" such authorization to take place only through the citizens' initiative process.[2] Accordingly, for the reasons expressed above, we conclude that the ballot title and summary of the Initiative comply with the clarity requirements of section 101.161, Florida Statutes.

### III. Financial Impact Statement

As this Court has previously stated, "[a]lthough neither the proponent of the amendment nor the opponents assert that the Financial Impact Statement is misleading, this Court still has an independent obligation to review the statement to

---

2. Cf. In re Advisory Op. to Att'y Gen. English—the Official Language of Fla., 520 So. 2d 11, 13 (Fla. 1988) (holding that the difference in terminology between the text and the summary did not reasonably mislead even "[t]hough [the] meanings [of 'implement' and 'enforce'] are not precisely the same").

ensure that it is clear and unambiguous and in compliance with Florida law."
Advisory Op. re Use of Marijuana, 132 So. 3d at 809.  Article XI, section 5(c), of
the Florida Constitution provides: "The legislature shall provide by general law,
prior to the holding of an election pursuant to this section, for the provision of a
statement to the public regarding the probable financial impact of any amendment
proposed by initiative pursuant to section 3."  Section 100.371(5)(a), Florida
Statutes (2016), provides that the constitutionally required financial impact
statement must address "the estimated increase or decrease in any revenues or
costs to state or local governments resulting from the proposed initiative."  Section
100.371(5)(c)2 adds that the financial impact statement must be "clear and
unambiguous" and "no more than 75 words in length."

This Court has explained that its "review of financial impact statements is
narrow."  Advisory Op. re Water & Land Conservation, 123 So. 3d at 52.  This
Court only addresses "whether the statement is clear, unambiguous, consists of no
more than seventy-five words, and is limited to address the estimated increase or
decrease in any revenues or costs to the state or local governments."  Advisory Op.
to Att'y Gen. re Referenda Required for Adoption & Amend. of Local Gov't
Comprehensive Land Use Plans, 963 So. 2d 210, 214 (Fla. 2007).

Turning to this case, the financial impact statement for the Initiative states,
in full:

The amendment's impact on state and local government revenues and costs, if any, cannot be determined at this time because of its unknown effect on gambling operations that have not been approved by voters through a constitutional amendment proposed by a citizens' initiative petition process.

Being only forty-five words, the financial impact statement complies with the statutory word limit. § 100.371(5)(c)2., Fla. Stat. (2016). The financial impact statement merely states that the "impact on state and local government revenues and costs, if any," that the Initiative would have "cannot be determined at this time" because of the unknown effect the amendment may have on gambling operations that have not been approved through the citizens' initiative process.

In Advisory Opinion to the Attorney General re Fla. Growth Management Initiative Giving Citizens the Right to Decline Local Growth Management Plan Changes, 2 So. 3d 118 (Fla. 2008), this Court concluded, "Overall, the financial impact statement is necessarily indefinite but not unclear or ambiguous." Id. at 124. Likewise, although the financial impact statement in this case is indefinite, it complies with section 100.371(5), Florida Statutes.

## CONCLUSION

For the reasons explained above, we approve the Voter Control of Gambling in Florida Initiative for placement on the ballot.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE and CANADY, JJ., concur.
POLSTON, J., dissents with an opinion, in which LEWIS, J., concurs.

- 15 -

LAWSON, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

I would not approve the Voter Control of Gambling Initiative for placement on the ballot because it is both misleading and violates the single-subject requirement.

When addressing the clarity requirements of section 101.161(1), Florida Statutes, this Court has explained that "a ballot title and summary cannot 'fly under false colors' or 'hide the ball' with regard to the true effect of an amendment." Fla. Dep't of State v. Slough, 992 So. 2d 142, 147 (Fla. 2008). Further, regarding whether an initiative violates the single-subject requirement of article XI, section 3 of the Florida Constitution, this Court has explained that "we must consider whether the proposal affects separate functions of government and how the proposal affects other provisions of the constitution." In re Advisory Op. to Att'y Gen.—Restricts Laws Related to Discrimination, 632 So. 2d 1018, 1020 (Fla. 1994).

Here, the ballot title and summary do not clearly inform the public that the proposed amendment may substantially affect slot machines approved by county-wide referenda pursuant to article X, section 23, Florida Constitution, or pursuant to validly enacted statutes. Although the ballot summary references article X of

- 16 -

the Florida Constitution, there is no explanation whatsoever of how the proposal affects the slot machines constitutional provision found there. See Advisory Op. to Att'y Gen.—Ltd. Political Terms in Certain Elective Offices, 592 So. 2d 225, 228 (Fla. 1991) ("A ballot summary may be defective if it omits material facts necessary to make the summary not misleading."); Askew v. Firestone, 421 So. 2d 151, 156 (Fla. 1982) ("The problem, therefore, lies not with what the summary says, but, rather, with what it does not say."). As a result, the public cannot fully comprehend how the initiative will affect article X, and the initiative's effect is left unresolved and open to multiple interpretations. See Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers, 705 So. 2d 563, 565-66 (Fla. 1998) ("[I]t is imperative that an initiative identify the provisions of the constitution substantially affected by the proposed amendment in order for the public to fully comprehend the contemplated changes and to ensure that the initiative's effect on other unnamed provisions is not left unresolved and open to various interpretations.").

The initiative is placing voters in the position of deciding between a preference for controlling the expansion of full-fledged casino gambling and Florida's current legal gaming landscape. See id. at 566 (striking initiative because "[t]he amendment forces the voter who may favor or oppose one aspect of the ballot initiative to vote on the health care provider issue in an 'all or nothing'

- 17 -

manner"). And it is doing so without clearly informing the voters that this is the choice they are making. See Advisory Op. to Att'y Gen. re 1.35% Prop. Tax Cap, Unless Voter Approved, 2 So. 3d 968, 974 (Fla. 2009) (striking initiative and explaining that "the ballot must give the voter fair notice of the decision he must make").

Accordingly, I would not approve this initiative for placement on the ballot. I respectfully dissent.

LEWIS, J., concurs.

Two Cases:

Original Proceedings – Advisory Opinion – Attorney General

Pamela Jo Bondi, Attorney General, Lagran Saunders, Senior Assistant Attorney General, and Rachel Erin Nordby, Deputy Solicitor General, Tallahassee, Florida,

    for Petitioner

Dan Gelber, Adam M. Schachter, and Freddy R. Funes of Gelber Schachter & Greenberg, P.A., Miami, Florida,

    for Voters in Charge, Sponsor

John M. Lockwood, Thomas J. Morton, and Kala Kelly Shankle of The Lockwood Law Firm, Tallahassee, Florida, on behalf of Jacksonville Kennel Club, Inc., Dania Entertainment, LLC, Investment Corporation of Palm Beach, West Flagler Associates, LTD., Bonita-Fort Myers Corporation, and Melbourne Greyhound Park, LLC,; and Marc W. Dunbar, Daniel R. Russell, and Daniel J. McGinn of Jones Walker LLP, Tallahassee, Florida, on behalf of Floridians for Clarity in Gaming Control,

    as Opponents