*791 PER CURIAM.
The Attorney General of Florida has petitioned this Court for an advisory opinion as to the validity of a proposed citizen initiative amendment to the Florida Constitution, submitted by an organization called People United for Medical Marijuana (the “proponent”), and the corresponding Financial Impact Statement submitted by the Financial Impact Estimating Conference. We have jurisdiction. See art. IV, § 10; art. V, § 3(b)(10), Fla. Const.
Our review of the proposed amendment is confined to two issues: (1) whether the proposed amendment itself satisfies the single-subject requirement of article XI, section 3, of the Florida Constitution; and (2) whether the ballot title and summary satisfy the requirements of section 101.161(1), Florida Statutes (2013). See Advisory Op. to Att’y Gen. re Water & Land Conservation — Dedicates Funds to Acquire & Restore Fla. Conservation & Recreation Lands, 123 So.3d 47, 50 (Fla.2013). For the reasons we explain, we conclude that the proposed amendment embraces a single subject, which is the medical use of marijuana, and therefore complies with article XI, section 3.
We also conclude that the ballot title and summary comply with section 101.161(1) because they are not clearly and conclusively defective. By reading the proposed amendment as a whole and construing the ballot title together with the ballot summary, we hold that the voters are given fair notice as to the chief purpose and scope of the proposed amendment, which is to allow a restricted use of marijuana for certain “debilitating” medical conditions. We conclude that the voters will not be affirmatively misled regarding the purpose of the proposed amendment because the ballot title and summary accurately convey the limited use of marijuana, as determined by a licensed Florida physician, that would be authorized by the amendment consistent with its intent. The interpretation of the proposed amendment offered by the proponent that “the intent is to allow [marijuana] use for a serious medical condition or disease,” rather than for any medical condition for which a physician personally believes that the benefits outweigh the health risks, is a reasonable one that is supported by accepted principles of constitutional interpretation.
Finally, we conclude that the accompanying Financial Impact Statement is in compliance with section 100.371(5), Florida Statutes (2013). We therefore approve the proposed amendment and Financial Impact Statement for placement on the ballot. We express no opinion as to the merits of the proposal.
I. BACKGROUND
On October 24, 2013, the Attorney General petitioned this Court for an opinion as to the validity of a citizen initiative petition sponsored by the proponent and circulated pursuant to article XI, section 3, of the Florida Constitution. The proposed amendment would add a new section 29 to article X of the Florida Constitution. The full text of the proposed amendment states as follows:
ARTICLE X, SECTION 29. Medical marijuana production, possession and use.—
(a) PUBLIC POLICY.
(1) The medical use of marijuana by a qualifying patient or personal caregiver is not subject to criminal or civil liability or sanctions under Florida law except as provided in this section.
(2) A physician licensed in Florida shall not be subject to criminal or civil liability or sanctions under Florida law for issuing a physician certification to a person diagnosed with a debilitating *792 medical condition in a manner consistent with this section.
(3)Actions and conduct by a medical marijuana treatment center registered with the Department, or its employees, as permitted by this section and in compliance with Department regulations, shall not be subject to criminal or civil liability or sanctions under Florida law except as provided in this section.
(b) DEFINITIONS. For purposes of this section, the following words and terms shall have the following meanings:
(1) “Debilitating Medical Condition” means cancer, glaucoma, positive status for human immunodeficiency virus (HIV), acquired immune deficiency syndrome (AIDS), hepatitis C, amyotrophic lateral sclerosis (ALS), Crohn’s disease, Parkinson’s disease, multiple sclerosis or other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.
(2) “Department” means the Department of Health or its successor agency.
(3) “Identification card” means a document issued by the Department that identifies a person who has a physician certification or a personal caregiver who is at least twenty-one (21) years old and has agreed to assist with a qualifying patient’s medical use of marijuana.
(4) “Marijuana” has the meaning given cannabis in Section 893.02(3), Florida Statutes (2013).
(5) “Medical Marijuana Treatment Center” means an entity that acquires, cultivates, possesses, processes (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfers, transports, sells, distributes, dispenses, or administers marijuana, products containing marijuana, related supplies, or educational materials to qualifying patients or their personal caregivers and is registered by the Department.
(6) “Medical use” means the acquisition, possession, use, delivery, transfer, or administration of marijuana or related supplies by a qualifying patient or personal caregiver for use by a qualifying patient for the treatment of a debilitating medical condition.
(7) “Personal caregiver” means a person who is at least twenty-one (21) years old who has agreed to assist with a qualifying patient’s medical use of marijuana and has a caregiver identification card issued by the Department. A personal caregiver may assist no more than five (5) qualifying patients at one time. An employee of a hospice provider, nursing, or medical facility may serve as a personal caregiver to more than five (5) qualifying patients as permitted by the Department. Personal caregivers are prohibited from consuming marijuana obtained for the personal, medical use by the qualifying patient.
(8) “Physician” means a physician who is licensed in Florida.
(9) “Physician certification” means a written document signed by a physician, stating that in the physician’s professional opinion, the patient suffers from a debilitating medical condition, that the potential benefits of the medical use of marijuana would likely outweigh the health risks for the patient, and for how long the physician recommends the medical use of marijuana for the patient. A physician certification may only be provided after the physician has conducted a physical examination of the patient and a full assessment of the patient’s medical history.
(10) “Qualifying patient” means a person who has been diagnosed to have a debilitating medical condition, who has a physician certification and a valid quali- *793 lying patient identification card. If the Department does not begin issuing identification cards within nine (9) months after the effective date of this section, then a valid physician certification will serve as a patient identification card in order to allow a person to become a “qualifying patient” until the Department begins issuing identification cards.
(c) LIMITATIONS.
(1) Nothing in this section shall affect laws relating to non-medical use, possession, production or sale of marijuana.
(2) Nothing in this section authorizes the use of medical marijuana by anyone other than a qualifying patient.
(3) Nothing in this section allows the operation of a motor vehicle, boat, or aircraft while under the influence of marijuana.
(4) Nothing in this law section [sic] requires the violation of federal law or purports to give immunity under federal law.
(5) Nothing in this section shall require any accommodation of any on-site medical use of marijuana in any place of education or employment, or of smoking medical marijuana in any public place.
(6) Nothing in this section shall require any health insurance provider or any government agency or authority to reimburse any person for expenses related to the medical use of marijuana.
(d) DUTIES OF THE DEPARTMENT. The Department shall issue reasonable regulations necessary for the implementation and enforcement of this section. The purpose of the regulations is to ensure the availability and safe use of medical marijuana by qualifying patients. It is the duty of the Department to promulgate regulations in a timely fashion.
(1)Implementing Regulations. In order to allow the Department sufficient time after passage of this section, the following regulations shall be promulgated no later than six (6) months after the effective date of this section:
a. Procedures for the issuance of qualifying patient identification cards to people with physician certifications, and standards for the renewal of such identification cards.
b. Procedures for the issuance of personal caregiver identification cards to persons qualified to assist with a qualifying patient’s medical use of marijuana, and standards for the renewal of such identification cards.
c. Procedures for the registration of Medical Marijuana Treatment Centers that include procedures for the issuance, renewal, suspension, and revocation of registration, and standards to ensure security, record keeping, testing, labeling, inspection, and safety.
d. A regulation that defines the amount of marijuana that could reasonably be presumed to be an adequate supply for qualifying patients’ medical use, based on the best available evidence. This presumption as to quantity may be overcome with evidence of a particular qualifying patient’s appropriate medical use.
(2) Issuance of identification cards and registrations. The Department shall begin issuing qualifying patient and personal caregiver identification cards, as well as begin registering Medical Marijuana Treatment Centers no later than nine months (9) after the effective date of this section.
(3) If the Department does not issue regulations, or if the Department does not begin issuing identification cards and registering Medical Marijuana Treatment Centers within the time limits set *794 in this section, any Florida citizen shall have standing to seek judicial relief to compel compliance with the Department’s constitutional duties.
(4) The Department shall protect the confidentiality of all qualifying patients. All records containing the identity of qualifying patients shall be confidential and kept from public disclosure other than for valid medical or law enforcement purposes.
(e) LEGISLATION. Nothing in this section shall limit the legislature from enacting laws consistent with this provision.
(f) SEVERABILITY. The provisions of this section are severable and if any clause, sentence, paragraph or section of this measure, or an application thereof, is adjudged invalid by any court of competent jurisdiction other provisions shall continue to be in effect to the fullest extent possible.
The ballot title for the proposed amendment is “Use of Marijuana for Certain Medical Conditions,” and the ballot summary, which is limited by law to seventy-five words, reads as follows:
Allows the medical use of marijuana for individuals with debilitating diseases as determined by a licensed Florida physician. Allows caregivers to assist patients’ medical use of marijuana. The Department of Health shall register and regulate centers that produce and distribute marijuana for medical purposes and shall issue identification cards to patients and caregivers. Applies only to Florida law. Does not authorize violations of federal law or any non-medical use, possession or production of marijuana.
On November 4, 2013, the Financial Impact Estimating Conference forwarded to the Attorney General the following Financial Impact Statement regarding the proposed amendment:
Increased costs from this amendment to state and local governments cannot be determined. There will be additional regulatory and enforcement activities associated with the production and sale of medical marijuana. Fees will offset at least a portion of the regulatory costs. While sales tax may apply to purchases, changes in revenue cannot reasonably be determined since the extent to which medical marijuana will be exempt from taxation is unclear without legislative or state administrative action.
Following this Court’s direction for interested parties to file briefs as to the Attorney General’s petition, the proponent submitted a brief in support of the proposed amendment’s validity, while the Court received four briefs in opposition, filed by the Attorney General; the Florida Senate and Florida House of Representatives; the Florida Chamber of Commerce, Florida Medical Association, Florida Police Chiefs Association, Florida Sheriffs Association, and Save Our Society from Drugs; and a pro se citizen (collectively, the “opponents”). No briefs or comments were submitted to this Court in response to the proponent’s argument that the Financial Impact Statement complies with section 100.371(5), Florida Statutes.
II. STANDARD OF REVIEW
This Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and “has been reluctant to interfere” with “the right of self-determination for all Florida’s citizens” to formulate “their own organic law.” Advisory Op. to Att’y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 494 (Fla.2002). As this Court has stated:
*795 There is no lawful reason why the electors of this State should not have the right to determine the manner in which the Constitution may be amended. This is the most sanctified area in which a court can exercise power. Sovereignty resides in the people and the electors have a right to approve or reject a proposed amendment to the organic law of this State, limited only by those instances where there is an entire failure to comply with a plain and essential requirement of [the law].
Id. (quoting Pope v. Gray, 104 So.2d 841, 842 (Fla.1958)). In this vein, this Court has long explained that our “duty is to uphold the proposal unless it can be shown to be ‘clearly and conclusively defective.’ ” In re Advisory Op. to Att’y Gen. re Florida’s Amend. to Reduce Class Size, 816 So.2d 580, 582 (Fla.2002) (quoting Advisory Op. to Att’y Gen. re Tax Limitation, 673 So.2d 864, 867 (Fla.1996)); see also In re Advisory Op. to Att’y Gen. re Med. Liab. Claimant’s Comp. Amend., 880 So.2d 675, 676 (Fla.2004) (“In order for the Court to invalidate a proposed amendment, the record must show that the proposal is clearly and conclusively defective.... ” (quoting Advisory Op. to Att’y Gen. re Amend. to Bar Gov’t from Treating People Differently Based on Race in Pub. Educ., 778 So.2d 888, 891 (Fla.2000))).
When determining the validity of an amendment arising through the citizen initiative process, our inquiry is limited to two legal issues: (1) whether the proposed amendment violates the single-subject requirement of article XI, section 3, of the Florida Constitution; and (2) whether the ballot title and summary violate the requirements of section 101.161(1), Florida Statutes. Right to Treatment & Rehab., 818 So.2d at 494. We do not address the merits of the proposal. Id.
We begin our analysis in this case with the single-subject requirement.
III. SINGLE-SUBJECT REQUIREMENT
Article XI, section 3, of the Florida Constitution sets forth the requirements for a proposed constitutional amendment arising through the citizen initiative process. This constitutional provision provides in pertinent part that any proposed citizen initiative amendment “shall embrace but one subject and matter directly connected therewith.” Art. XI, § 3, Fla. Const. “In evaluating whether a proposed amendment violates the single-subject requirement, the Court must determine whether it has a ‘logical and natural oneness of purpose.’ ” Treating People Differently, 778 So.2d at 891-92 (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984)).
The single-subject requirement “is a rule of restraint designed to insulate Florida’s organic law from precipitous and cataclysmic change.” In re Advisory Op. to Att’y Gen.—Save Our Everglades, 636 So.2d 1336, 1339 (Fla.1994). This requirement prevents a proposal “from engaging in either of two practices: (a) logrolling; or (b) substantially altering or performing the functions of multiple branches of state government.” Water & Land Conservation, 123 So.3d at 50-51.
This Court has defined logrolling as “a practice wherein several separate issues are rolled into a single initiative in order to aggregate votes or secure approval of an otherwise unpopular issue.” Save Our Everglades, 636 So.2d at 1339. This Court has also explained that “[a] proposal that affects several branches of government will not automatically fail; rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test.” Advisory Op. to Att’y Gen. re Fish & *796 Wildlife Conservation Comm’n, 705 So.2d 1351, 1353-54 (Fla.1998).
The opponents, including the Attorney-General and the Legislature, allege that the proposed amendment violates the single-subject requirement for a variety of reasons, including that the amendment engages in impermissible logrolling by combining separate subjects into one proposal, and that the amendment substantially alters multiple functions of government by making broad legislative policy determinations; exercising executive authority through “constitutionalizing” the Department of Health and establishing a complex regulatory system; and providing physicians broad immunity, thereby affecting access to courts. We disagree.
We conclude that the proposed amendment has a logical and natural oneness of purpose — namely, whether Floridians want a provision in the state constitution authorizing the medical use of marijuana, as determined by a licensed Florida physician, under Florida law. The amendment’s provision of a specific role for the Department of Health in overseeing and licensing the medical use of marijuana is directly connected with this purpose. See Advisory Op. to Att’y Gen.—Fee on Everglades Sugar Prod., 681 So.2d 1124, 1128 (Fla.1996) (concluding that the proposal did not violate the single-subject requirement and explaining that “the imposition of the fee and the designation of the revenue ... are two components directly connected to the fundamental policy of requiring first processors to contribute towards ongoing Everglades restoration”). As this Court explained in Advisory Opinion to the Attorney General re Standards for Establishing Legislative District Boundaries, 2 So.3d 175 (Fla.2009), a proposed amendment may “delineate a number of guidelines” consistent with the single-subject requirement as long as these components possess “a natural relation and connection as component parts or aspects of a single dominant plan or scheme.” Id. at 181-82 (quoting Advisory Op. to Att’y Gen. re Patients’ Right to Know About Adverse Med. Incidents, 880 So.2d 617, 620 (Fla.2004)).
Further, removing state-imposed penalties and liability from those involved in the authorized medical use of marijuana consistent with the proposed amendment is also directly connected with the amendment’s purpose. Therefore, the proposed amendment does not engage in impermissible logrolling, but is instead consistent with prior proposals this Court has approved “because they encompassed a single plan and merely enumerated various elements necessary to accomplish that plan.” Id. at 182; see also Advisory Op. to Att’y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000) (holding that “there is no impermissible logrolling” where “[t]he only subject embraced in the proposed amendment is whether the people of this State want to include a provision in their Constitution mandating that the government build a high speed ground transportation system”).
Additionally, the proposed amendment does not substantially alter or perform the functions of multiple branches. If the amendment passes, the Department of Health would perform regulatory oversight, which would not substantially alter its function or have a substantial impact on legislative functions or powers. The amendment would require the Department of Health or its successor agency to register and oversee providers, issue identification cards, and determine treatment amounts to ensure the “safe use of medical marijuana by qualifying patients.” See *797 Everglades Sugar Prod., 681 So.2d at 1128 (“[T]he Fee amendment does not substantially affect or alter any government function, but is a levy by an existing agency.”); see also Advisory Op. to Att’y Gen. re Term Limits Pledge, 718 So.2d 798, 802 (Fla.1998) (concluding that the initiative did not substantially alter the functions of multiple branches “even though affecting the constitutional authority of the Secretary of State and affecting more than one provision of the constitution”).
“[T]he fact that [a] branch of government is required to comply with a provision of the Florida Constitution does not necessarily constitute the usurpation of the branch’s function within the meaning of the single-subject rule.” Advisory Op. to Att’y Gen. re Protect People, Especially Youth, From Addiction, Disease, and Other Health Hazards of Using Tobacco, 926 So.2d 1186, 1192 (Fla.2006). Moreover, the Department of Health would not be empowered under this amendment to make the types of primary policy decisions that are prohibited under the doctrine of nondelegation of legislative power. See Askew v. Cross Key Waterways, 372 So.2d 913, 925 (Fla.1978).
Accordingly, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3.
IV. BALLOT TITLE AND SUMMARY
The next issue we address is whether the proposed amendment will be “accurately represented on the ballot.” Armstrong v. Harris, 773 So.2d 7, 12 (Fla.2000) (emphasis omitted). This requires us to consider two questions: (1) whether the ballot title and summary, in clear and unambiguous language, fairly inform the voters of the chief purpose of the amendment; and (2) whether the language of the ballot title and summary, as written, will be affirmatively misleading to voters. See Advisory Op. to Att’y Gen. re Fla. Marriage Prot. Amend., 926 So.2d 1229, 1236 (Fla.2006).
We conclude that the ballot title and summary fairly inform voters of the chief purpose of the amendment and will not mislead voters, who will be able to cast an intelligent and informed ballot as to whether they want a provision in the state constitution authorizing the medical use of marijuana, as determined by a licensed Florida physician, under Florida law. We therefore reject the opponents’ assertion that the amendment “would allow far wider marijuana use than the ballot title and summary reveal.”
Section 101.161, Florida Statutes, governs the requirements for the ballot title and summary of an initiative petition. This statute provides in pertinent part as follows:
(1) Whenever a constitutional amendment or other public measure is submitted to the vote of the people, a ballot summary of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot after the list of candidates, followed by the word “yes” and also by the word “no,” and shall be styled in such a manner that a “yes” vote will indicate approval of the proposal and a “no” vote will indicate rejection. The ballot summary of the amendment or other public measure and the ballot title to appear on the ballot shall be embodied in the constitutional revision commission proposal, constitutional convention proposal, taxation and budget reform commission proposal, or enabling resolution or ordinance. The ballot summary of the amendment or other public measure shall be an explanatory statement, not *798 exceeding 75 words in length, of the chief purpose of the measure. In addition, for every amendment proposed by initiative, the ballot shall include, following the ballot summary, a separate financial impact statement concerning the measure prepared by the Financial Impact Estimating Conference in accordance with s. 100.371(5). The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of. This subsection does not apply to constitutional amendments or revisions proposed by joint resolution.
§ 101.161(1), Fla. Stat. (2013).
In Save Our Everglades, this Court explained the meaning of section 101.161 in the following way:
“[Sjection 101.161 requires that the ballot title and summary for a proposed constitutional amendment state in clear and unambiguous language the chief purpose of the measure.” This is so that the voter will have notice of the issue contained in the amendment, will not be misled as to its purpose, and can cast an intelligent and informed ballot. However, “[i]t is not necessary to explain every ramification of a proposed amendment, only the chief purpose.”
636 So.2d at 1341 (citations omitted). “In brief, the ballot title and summary must fairly inform the voter of the chief purpose of the amendment.” Right to Treatment & Rehab., 818 So.2d at 497.
The opponents and Chief Justice Pol-ston’s dissent, agreeing with the arguments of the opponents, allege multiple reasons why the ballot title and summary are affirmatively misleading. Taken together, the main arguments of the opponents and the Chief Justice’s dissent are that: (1) the summary “promises a narrow and limited marijuana program — the precise opposite of what the [ajmendment would deliver”; (2) the summary fails to disclose that physicians who authorize patients’ use of medical marijuana consistent with the amendment allegedly will receive broad tort and disciplinary immunity; and (3) the summary wrongly suggests that the amendment “allows” activities that are plainly illegal under federal law. We address each of these arguments in turn.
A. The Scope of the Amendment
We begin with the opponents’ first and primary assertion: that the ballot title and summary hide the true scope of the proposed amendment. Specifically, we address two arguments raised by the opponents and contained in the dissents of Chief Justice Polston and Justice Labarga: (1) that the ballot summary is misleading because the phrase “debilitating diseases” will lead voters to think that the conditions that would qualify for the medical use of marijuana are only very serious ones, when in fact the amendment would permit virtually “limitless” use of marijuana; and (2) that the ballot title and summary are misleading based on the inconsistent use of terms such as “certain” in the title and “diseases” in the summary that will lead voters to believe that the amendment is narrow in scope, when in actuality it would authorize marijuana use for any condition for which a physician believes that the benefits outweigh the risks. To further illustrate this contention as to the “limitless” scope of the proposed amendment, Chief Justice Polston asserts that under the amendment, medical marijuana could be prescribed for “anxiety about an upcoming exam” or “minor aches and pains.” Dissenting op. at 812, 814 (Polston, C.J.).
The opponents and Chief Justice Pol-ston’s dissent contend that the proponent deceptively uses the phrases “debilitating diseases” and “certain medical conditions” in the ballot title and summary in an attempt to gain an electoral advantage with *799 voters who might otherwise object to a broader use of medical marijuana. The proponent counters that the intent of the amendment and the actual wording of the amendment, when various portions are read together, is not to authorize the open-ended and broad use of marijuana whenever a physician personally believes that the benefits outweigh the risks.
To the contrary, the proponent contends that the opponents advance a flawed interpretation of the proposed amendment as being “limitless” in scope and assert that marijuana can be prescribed by a physician only after the physician performs a physical examination, reviews the patient’s medical history and finds that the patient has a “debilitating” medical condition, concludes that the potential benefits of using medical marijuana would likely outweigh the health risks, and then allows a limited time for any qualifying use. The proponent states that the “intent is to allow use for a serious medical condition or disease.”
Because the proponent and opponents disagree as to the scope of the proposed amendment, and because in our view the question of whether the ballot title and summary are misleading on this point turns on the interpretation of the amendment itself, we must review the operative portions of the proposed amendment’s text. ‘When reviewing constitutional provisions, this Court follows principles parallel to those of statutory interpretation.” Graham v. Haridopolos, 108 So.3d 597, 603 (Fla.2013) (quoting Crist v. Fla. Ass’n of Criminal Def. Lawyers, Inc., 978 So.2d 134, 139 (Fla.2008)).
1. “Debilitating Medical Condition”
The initial argument we address concerns the breadth of the phrase “debilitating medical condition” in the text of the proposed amendment. There are three pertinent sections of the amendment related to this issue.
First, subsection (b)(1) defines the term “Debilitating Medical Condition” to mean:
cancer, glaucoma, positive status for human immunodeficiency virus (HIV), acquired immune deficiency syndrome (AIDS), hepatitis C, amyotrophic lateral sclerosis (ALS), Crohn’s disease, Parkinson’s disease, multiple sclerosis or other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.
Second, subsection (b)(9) defines the term “Physician Certification” to mean:
a written document signed by a physician, stating that in the physician’s professional opinion, the patient suffers from a debilitating medical condition, that the potential benefits of the medical use of marijuana would likely outweigh the health risks for the patient, and for how long the physician recommends the medical use of marijuana for the patient. A physician certification may only be provided after the physician has conducted a physical examination of the patient and a full assessment of the patient’s medical history.
Finally, subsection (b)(10) defines the term “Qualifying patient” to mean “a person who has been diagnosed to have a debilitating medical condition, who has a physician certification and a valid qualifying patient identification card.”
The opponents claim that, contrary to the impression presented by the ballot title and summary, these provisions in the proposed amendment’s text authorize the medical use of marijuana for more conditions than are commonly thought of as “debilitating,” and would allow physicians unfettered authority to authorize the use of marijuana for conditions ranging from *800 everyday aches and pains to everyday stresses. In support of their argument about the breadth of the proposed amendment, the opponents point to the portion of subsection (b)(1) that includes, within the definition of “debilitating medical condition,” the phrase “other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.”
The proponent responds that the term “debilitating medical condition,” as defined in the text of the proposed amendment, includes specific and known debilitating conditions such as cancer and ALS but simply cannot and “does not attempt to define all possible debilitating conditions” for now and the future. The proponent contends that the “other conditions determined by a physician must be generically similar in severity or seriousness to the specific list of medical conditions” set forth in the proposed amendment.
The proponent further asserts that the types of conditions for which the proposed amendment authorizes the medical use of marijuana are limited by the requirement of “physician certification,” which mandates that a physician certify in writing that the patient suffers from a “debilitating” condition and that the benefits of medical marijuana usage outweigh the health risks to the patient. In other words, the proponent states that the ballot title and summary are not misleading precisely because the intent of the amendment is to limit the use of marijuana to “debilitating medical conditions” and not to a broad and open-ended range of more minor medical conditions.
We reject the opponents’ construction of the proposed amendment. Instead, for the reasons that follow, we conclude that the interpretation offered by the proponent is a reasonable one that is supported by accepted principles of constitutional interpretation.
In order to determine the scope of the proposed amendment, we begin by defining the key term “debilitating,” which is the term used in both the amendment itself and the ballot summary to describe the types of conditions for which the amendment would authorize the medical use of marijuana. Notably, although “debilitating” is the key term that defines the breadth of the proposed amendment because it restricts the “medical conditions” that fall within the amendment’s scope, Chief Justice Polston’s dissent finds this critical term to be insignificant, focusing instead on the differences that exist between the terms “condition” in the ballot title and text of the proposed amendment and “disease” in the ballot summary, while minimizing the impact of the “debilitating” modifier used in both the proposed amendment and the ballot summary. To the contrary, we conclude that an analysis of the term “debilitating” is critical to understanding the intended scope of the proposed amendment, as a patient does not qualify under the text of the proposed amendment to receive a physician certification unless a licensed Florida physician makes a professional determination that the medical condition is “debilitating.”
In construing terms used in the constitution and presented to the voters in a proposed constitutional amendment, this Court looks to dictionary definitions of the terms because we recognize that, “in general, a dictionary may provide the popular and common-sense meaning of terms presented to the voters.” Advisory Op. to Gov.-1996 Amend. 5 (Everglades), 706 So.2d 278, 282 (Fla.1997). Merriam Webster’s Collegiate Dictionary defines “debilitating” to mean “to impair the strength of; enfeeble.” Merriam-Webster’s Collegiate Dictionary 320 (11th ed. 2005). The *801 Oxford English Dictionary likewise defines “debilitating” to mean “[t]hat debilitates; weakening, enfeebling,” where “debilitate” is defined as “[t]o render weak; to weaken, enfeeble.” The Oxford English Dictionary 312 (2d ed. 1989). Similarly, Stedman’s Medical Dictionary defines “debilitating” as “[denoting or characteristic of a morbid process that causes weakness,” where “morbid” is defined as “[diseased or pathologic.” Stedman’s Medical Dictionary 496, 1226 (28th ed. 2006).
The common definition of “debilitating,” based on these authorities, is therefore similar under both medical and lay dictionaries. While the opponents suggest that the proposed amendment would authorize the “unfettered” use of marijuana to treat more conditions than are commonly thought of as “debilitating,” the popular and common-sense meaning of “debilitating” — though not requiring the condition to be as “serious and devastating” as the opponents state — still requires that the medical condition cause impaired strength, weakness, or enfeeblement. In other words, a physician must first make a professional determination that the patient’s medical condition causes impaired strength, weakness, or enfeeblement in order to consider issuing a physician certification consistent with the proposed amendment, which limits the amendment’s scope.
Nevertheless, the opponents contend that the proposed amendment does not even require that an individual’s condition be “debilitating.” In arguing that the proposed amendment is virtually “limitless,” the opponents point to the portion of the definition of “debilitating medical condition” within the proposed amendment that includes the phrase “other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.”
This phrase, however, is found within the section of the proposed amendment that defines “debilitating medical condition.” (Emphasis added.) In this regard, we conclude that the phrase cannot be read in isolation to include any medical condition in which the physician concludes that the benefits of marijuana use outweigh the health risks, regardless of the “debilitating” nature of the condition. Instead, in order for a physician to prescribe marijuana to treat a medical condition not specifically listed in the amendment, the physician still must make a professional determination that the condition is “debilitating.”
Further and importantly, the statutory and constitutional construction principle of ejusdem generis — which is a Latin term for “of the same kind” — is instructive on this issue. Distilled to its essence, this rule provides that where general words or phrases follow an enumeration of specific words or phrases, “the general words are construed as applying to the same kind or class as those that are specifically mentioned.” Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1088-89 (Fla.2005); see also Graham, 108 So.3d at 605.
Application of ejusdem generis in this ease supports our conclusion that the scope of the proposed amendment is not open-ended because the general category of “other conditions” that may qualify as a “debilitating medical condition” under the terms of the amendment must be of the “same kind or class” as those conditions specifically mentioned. In State v. Hearns, 961 So.2d 211, 219 (Fla.2007), this Court addressed the meaning of a similar general category that followed a specific list, concluding that the general phrase “any other felony involving the use or threat of physical force or violence” included “only offenses which involve a level of physical force or violence comparable to *802 that of the enumerated felonies.” The Court observed that the mere touching of a law enforcement officer was “not in the same league” as the level of force contemplated by the enumerated felonies in the forcible felony statute. Id.; see also State v. Rivers, 660 So.2d 1360, 1362 (Fla.1995) (explaining that the general category of other crimes “dangerous to life, limb, or property, and punishable by imprisonment for more than one year” must be construed “as applying only to crimes of the same kind as those precisely stated in the statute”).
Although Chief Justice Polston’s and Justice Canady’s dissents criticize our use of ejusdem generis, our application of this principle of constitutional interpretation in this case is strikingly similar to its application in Hearns. While Chief Justice Pol-ston’s dissent asserts that “the majority rewrites the definition” of “debilitating medical condition” by “in effect insert[ing] the word ‘similar’ into the clear and unambiguous definition,” dissenting op. at 815 (Polston, C.J.), the canon of ejusdem gen-eris itself is predicated upon the concept that a general category following an enumeration of specific words or phrases should be construed “similarly” to those that are specifically mentioned. Thus, the very purpose of ejusdem generis is to assist the Court in interpreting a general category that follows a specific list but that does not include the word “similar.” In this way, Chief Justice Polston’s dissent appears to disagree with the interpretive canon itself, as any use of ejusdem generis under the dissent’s reasoning would involve inserting the word “similar” into the text.
Moreover, this Court is required to read the term “debilitating medical condition” together with the rest of the proposed amendment. In construing “multiple constitutional provisions addressing a similar subject, the provisions ‘must be read in pari materia to ensure a consistent and logical meaning that gives effect to each provision.’ ” Graham, 108 So.3d at 603 (quoting Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm’n, 838 So.2d 492, 501 (Fla.2003)).
In Advisory Opinion to the Attorney General re Florida Locally Approved Gaming, 656 So.2d 1259, 1262 (Fla.1995), this Court addressed a similar argument to the one presented by the opponents in this case that the ballot title and summary of a proposed citizen initiative amendment were misleading “because neither inform[ed] the voter of the actual effects of the proposed amendment.” This Court rejected that argument, concluding that two subsections of the proposed amendment “must be read together” in order to properly interpret the meaning of the amendment. Id. Moreover, the Court noted that its interpretation, after reading the proposed amendment in pari materia, was “fully consistent with the proponents’ construction of the amendment at oral argument.” Id.
We conclude that a similar analysis applies in this case. Reading subsections (b)(1), (b)(9), and (b)(10) together demonstrates that the circumstances under which marijuana can be prescribed by a physician are not open-ended to any condition in which the physician personally believes that the benefits outweigh the risks. To the contrary, the circumstances under which the proposed amendment authorizes the medical use of marijuana are limited by two conditions: first, that “in the physician’s professional opinion, the patient suffers from a debilitating medical condition”; and second, that “the potential benefits of the medical use of marijuana would likely outweigh the health risks for the patient.”
We therefore reject the view expressed in Chief Justice Polston’s dissent *803 that “by reading subsections (b)(1) and (b)(9) together, it is abundantly (and redundantly) clear that a physician need only believe that the potential benefits of marijuana would likely outweigh the risks” in order to issue a physician certification. Dissenting op. at 816 (Polston, C.J.). As this Court has consistently explained, “[i]t is an elementary principle of statutory [and constitutional] construction that significance and effect must be given to every word, phrase, sentence, and part” of the provision if possible. Gulfstream Park Racing Ass’n, Inc. v. Tampa Bay Downs, Inc., 948 So.2d 599, 606 (Fla.2006) (quoting Hechtman v. Nations Title Ins. of N.Y., 840 So.2d 993, 996 (Fla.2003)). The interpretation offered by Chief Justice Pol-ston’s dissent, however, would render meaningless the first part of subsection (b)(9), which states that the physician must determine that “the patient suffers from a debilitating medical condition,” since this determination would become unnecessary under the dissent’s reasoning given that the second part of subsection (b)(9) already requires a physician to determine that “the potential benefits of the medical use of marijuana would likely outweigh the health risks for the patient.”
When the various provisions of the proposed amendment are read together in the context of the entire amendment, it is reasonable to construe the amendment as being limited to “debilitating” medical conditions that require the professional opinion of a physician to diagnose, and that as to each “debilitating” condition, the benefits of prescribing marijuana as a treatment must outweigh the health risks. Further, a “physician certification” must be filed with the Department of Health, affirming that in the physician’s professional opinion, the patient suffers from a “debilitating” medical condition; that the potential benefits of the medical use of marijuana would likely outweigh the health risks; and a statement of “how long the physician recommends the medical use of marijuana for the patient.”
As to this “physician certification,” the amendment also states that it “may only be provided after the physician has conducted a physical examination of the patient and a full assessment of the patient’s medical history.” The amendment in addition requires that a “physician certification” must be filed with the Department of Health as to each “qualifying patient.”
Rather than allow the open-ended, broad use of marijuana, these multiple restrictions in the text of the amendment itself reflect a constitutional scheme that is meant to be limited in scope regarding the medical use of marijuana to treat “debilitating medical conditions.” Indeed, this interpretation is consistent with the interpretation of the proposed amendment offered by the proponent in its brief and at oral argument as to the intent of the amendment as proposed.
2. Use of “Certain Medical Conditions” and “Debilitating Diseases”
The opponents’ next argument as to the scope of the proposed amendment is that the ballot title and summary are affirmatively misleading because the use of the phrase “certain medical conditions” in the ballot title denotes a fixed number of conditions, and the term “debilitating diseases” used in the ballot summary — instead of “debilitating medical condition,” as used in the amendment itself — conveys a more limited scope regarding the use of marijuana than the amendment would actually permit. The proponent, on the other hand, contends that when viewed together, the ballot title and summary accurately convey the chief purpose of the amendment — to authorize the use of marijuana for certain debilitating medical con *804 ditions, as determined by a licensed Florida physician, under Florida law.
We agree with the proponent that, read together, the ballot title and summary accurately convey to voters the chief purpose of the proposed amendment. We have previously instructed that when determining whether the ballot title and summary are misleading, it is appropriate to consider both together. See Advisory Op. to Att’y Gen. re Voluntary Universal Pre-Kindergarten Educ., 824 So.2d 161, 166 (Fla.2002) (“[T]he ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters.”); Tax Limitation, 673 So.2d at 868 (rejecting the Attorney General’s argument because “[sjection 101.161 requires the ballot summary and title to be read together”). This proposition that the ballot title and summary “must be read together in determining whether the ballot information properly informs the voters” has been reaffirmed numerous times, including in Florida Department of State v. Slough, 992 So.2d 142, 148 (Fla.2008) (quoting Amendment to Reduce Class Size, 816 So.2d at 585).
The amendment’s ballot title — “Use of Marijuana for Certain Medical Conditions” — supports the proponent’s assertion that the voters will not be misled as to the scope of the amendment. Although the opponents contend that the use of “certain” implies that the number of “debilitating” conditions to which the amendment would apply is fixed and definite — while the amendment’s actual scope is not — we disagree.
The word “certain” can mean “fixed” or “settled,” but a primary dictionary definition of “certain” is also “of a specific but unspecified character, quantity, or degree.” Merriam-Webster’s Collegiate Dictionary 202 (11th ed. 2005); see also The Oxford English Dictionary 1050-51, (2d ed. 1989) (defining “certain” as both “determined, fixed, settled” and “a restricted or limited number of’ or “[o]f positive yet restricted ... quantity, amount, or degree”). It is therefore necessary to read the ballot title together with the ballot summary, which explains the severity of the conditions that may qualify for the medical use of marijuana and that the qualifying conditions are “determined by a licensed Florida physician.” Read together, the use of “certain” in the ballot title conveys to the voters the role of the physician in determining both the necessary severity for a qualifying condition and the medical benefits of marijuana to treat that condition.
The opponents also challenge, and both Chief Justice Polston’s and Justice Labar-ga’s dissenting opinions ascribe significance to, the use of the term “diseases” in the ballot summary since this term differs from the term “medical conditions” that is used in the text of the amendment itself. Merriam-Webster’s Collegiate Dictionary defines “disease” as “a condition of the living animal or plant body or of one of its parts that impairs normal functioning and is typically manifested by distinguishing signs and symptoms; sickness; malady.” Merriam-Webster’s Collegiate Dictionary 358 (11th ed. 2005) (emphasis added); see also Stedman’s Medical Dictionary 550 (28th ed. 2006) (defining “disease” as an “interruption, cessation, or disorder of a body, system, or organ structure or function”).
The fact that the ballot summary uses the phrase “debilitating diseases” while the text of the amendment uses the phrase “debilitating medical conditions” does not render the ballot summary per se misleading. The “inadvertent use of different but clearly synonymous terms in the proposed amendment and the summary *805 will not render a ballot summary fatally defective where ‘[t]he differing use of terminology could not reasonably mislead the voters.’ ” Legislative Dist. Boundaries, 2 So.3d at 185 (quoting Advisory Op. to Att’y Gen. re English-The Official Language of Fla., 520 So.2d 11, 13 (Fla.1988)).
We conclude that the use of “diseases” instead of “conditions” in the ballot summary will not reasonably mislead the voters. A “disease” is, by definition, a medical “condition.” See Merriam-Webster’s Collegiate Dictionary 358 (11th ed. 2005). Although the opponents and Chief Justice Polston’s dissent assert that the word “diseases” was intentionally chosen to deceive voters as to the scope of the amendment “in an attempt to gain electoral advantage with voters who might object to a broader use of medical marijuana,” dissenting op. at 814-15 (Polston, C.J.), it is the modifier “debilitating” — used in both the ballot summary and the amendment itself — that is the key to defining the severity of the conditions for which the amendment would apply. Further, the ballot title of the amendment, which must be read together with the ballot summary, uses the term “medical conditions.”
This case is therefore distinguishable from other cases in which this Court has held a ballot summary to be misleading because of a discrepancy between the terms used in the ballot summary and the text of the amendment, where the discrepancy was “material and misleading” and where the difference had “legal significance.” Treating People Differently, 778 So.2d at 896-97. For example, in In re Advisory Opinion to the Attorney General re Casino Authorization, Taxation & Regulation, 656 So.2d 466, 468-69 (Fla.1995), which is relied on by Chief Justice Pol-ston’s dissent, this Court invalidated a proposed amendment because “voters were not informed that the proposal’s use of different terminology was legally significant.” Treating People Differently, 778 So.2d at 897. In that case, the summary used the term “hotel,” while the text of the proposed amendment used the term “transient lodging establishment.” Casino Authorization, 656 So.2d at 468. This Court found that difference in terminology to be significant because the definitions of “hotel” and “transient lodging establishment” under the Florida Statutes were “substantially different.” Id. Further, in Treating People Differently, 778 So.2d at 896, also relied on by Chief Justice Polston’s dissent, the ballot titles and ballot summaries used the word “people,” while the text of the amendments referred to “persons” — a fact with legal significance not revealed to the voters regarding whether the amendments affected corporations. Id. at 896-97.
Unlike the discrepancies in those cases, there is no legal significance in this case between the use of “debilitating diseases” and “debilitating medical conditions.” While Chief Justice Polston points to out-of-state cases that “have acknowledged the differences in meaning between the terms ‘condition’ and ‘disease,’ and those differences have determined the outcomes of cases,” dissenting op. at 812 (Polston, C.J.), those cases are distinguishable because they have arisen in the insurance context, where other considerations not relevant to our analysis, such as determining when the medical condition began and the scope of insurance coverage, are important to the resolution of a legal dispute.
In contrast to those cases, our inquiry here focuses solely on whether the use of “debilitating diseases” in the ballot summary and “debilitating medical conditions” in the proposed amendment itself will be affirmatively misleading to Florida voters. It is only if the difference between the two terms is “legally significant,” and this legal significance is not disclosed to the voters, *806 that the use of different terminology will render the ballot summary affirmatively misleading. Because “debilitating,” which is used in both the ballot summary and the text of the proposed amendment itself, is the key to defining the severity of the conditions for which the amendment authorizes the medical use of marijuana, the difference between the use of “debilitating diseases” in the ballot summary and “debilitating medical conditions” in the amendment itself has no legal significance that is hidden from the voters.
Further, since “disease” is in fact defined as “a condition,” the difference in terminology is not “substantially different.” As this Court has repeatedly noted, “[tjhere is no requirement that the referendum question set forth the [text] verbatim nor explain its complete terms at great and undue length. Such [requirements] would hamper instead of aiding the intelligent exercise of the privilege of voting.” Legislative District Boundaries, 2 So.3d at 185 (quoting Right to Treatment & Rehab., 818 So.2d at 498). Instead, “[w]hat the law very simply requires is that the ballot give the voter fair notice of the question he must decide so that he may intelligently cast his vote.” Id. (quoting Right to Treatment & Rehab., 818 So.2d at 498).
Here, we conclude that the ballot title and summary, read together, satisfy the legal requirement that the voters be given “fair notice” as to the scope of the proposed amendment. Accordingly, we agree with the proponent that the phrases used in the ballot title and summary “are complementary and explanatory, not misleading” and reject the opponents’ arguments as to the allegedly misleading ballot language on the issue of the proposed amendment’s scope.
B. Physician Immunity
We next address the opponents’ position that the ballot summary is affirmatively misleading because the proposed constitutional amendment protects doctors who abuse the practice of medicine by prescribing marijuana fraudulently or negligently, but this important aspect of the amendment — that is, physician immunity — is nowhere revealed within the ballot summary. The opponents argue that the immunity from “civil liability or sanctions” would “preclude an injured patient from recovering damages in a civil action against a physician whose wrongful issuance of a physician certification recommending marijuana use resulted in damages to the patient” and the “prohibition against ‘sanctions’ on a physician would likewise bar the Board of Medicine from initiating a disciplinary action against a physician for recommending marijuana use to patients in a manner contrary to accepted professional standards.”
The proponent responds that the text of the proposed amendment provides no such broad immunity but offers protection to physicians only to the extent that they issue a physician certification “in a manner consistent with this section.” The proponent asserts that where a physician, whether by fraud or negligence, acts outside of professional standards in diagnosing a patient or prescribing marijuana, this behavior would not be “consistent with this section” and may be subject to professional, civil, or criminal sanctions. Further, the proponent asserts that statutes governing the practice of medicine would remain in effect if the amendment were to pass and would not be repealed by implication.
In other words, the proponent claims that it is not the intent of the proposed amendment to confer broad immunity, but the opponents claim that this is precisely what the amendment does, therefore rendering the ballot summary fatally defective for omitting this substantial effect. To *807 determine this issue, we once again must examine the text of the amendment as proposed and analyze whether the intent of the proponent was to confer broad immunity, even though the proponent adamantly asserts that there was no such intent.
The text of subsection (a)(2) of the proposed amendment provides in pertinent part as follows:
A physician licensed in Florida shall not be subject to criminal or civil liability or sanctions under Florida law for issuing a physician certification to a person diagnosed with a debilitating medical condition in a manner consistent with this section.
We agree with the proponent that this subsection does not grant broad immunity for either criminal or civil liability to physicians who prescribe medical marijuana fraudulently or even negligently. Rather, this subsection does no more than what it states — exempts physicians from being subject to criminal or civil liability or sanctions for the limited act of prescribing marijuana in a manner consistent with the amendment. This limited immunity is necessary because, in the absence of such immunity, the mere act of prescribing marijuana, a controlled substance under Florida law, would result in civil or criminal liability or sanctions, which would prevent the amendment from being implemented. In this regard, the proposed amendment does not protect physicians who fraudulently or negligently prescribe medical marijuana, does not change the professional duties and obligations of licensed Florida physicians, and does not restrict Florida’s current constitutional right of access to the courts.
Under the proposed amendment, it is a reasonable construction that physicians are granted immunity only to the extent that they prescribe marijuana “consistent with this section.” In other words, if a physician prescribes marijuana without having conducted a physical examination of the patient or without having made a “full assessment of the patient’s medical history,” and harm to the patient results, this conduct would not be “consistent with this section” and the physician would not be granted immunity.
The immunity subsection allows physicians to prescribe, consistent with the amendment, the medical use of marijuana as a possible treatment option for a “debilitating medical condition” without being criminally or civilly liable or subject to sanctions under Florida law. As the proponent states, in order to enable physicians “to consider medical marijuana and certify its use, it is necessary to prevent them from being punished for the limited act of recommending marijuana under the terms of the amendment. That is all the amendment does.... The amendment does not change liability for negligence, fraud or misconduct.”
In addition, nothing in the text of the amendment explicitly repeals existing medical malpractice statutes. This Court has long held that “[i]n considering the effect of constitutional amendments upon existing statutes, the rule is that the statute will continue in effect unless it is completely inconsistent with the plain terms of the Constitution.” In re Advisory Op. to Gov., 132 So.2d 163, 169 (Fla.1961). It is also settled that “implied repeal of one constitutional provision by another is not favored, and every reasonable effort will be made to give effect to both provisions. Unless the later amendment expressly repeals or purports to modify an existing provision,” this Court has explained that “the old and new should stand and operate together unless the clear intent of the later provision is thereby defeated.” Legisla *808 tive Dist. Boundaries, 2 So.3d at 190 (quoting Jackson v. City of Jacksonville, 225 So.2d 497, 500-01 (Fla.1969)). Therefore, as the proposed amendment does not explicitly repeal and is not completely inconsistent with existing medical malpractice or liability statutes, and does not mention the constitutional right of access to courts, we conclude that these provisions would remain in full effect if the amendment were to pass.
As this Court has stated, “a ballot summary need not (and because of the statutory word limit, often cannot) explain ‘at great and undue length’ the complete details of a proposed amendment, and some onus falls upon voters to educate themselves about the substance of the proposed amendment.” Legislative Dist. Boundaries, 2 So.3d at 186 (quoting Right to Treatment & Rehab., 818 So.2d at 498). Because we conclude that this amendment would not alter the liability of physicians for fraudulently or negligently prescribing marijuana, we reject the opponents’ assertion that the ballot summary is affirmatively misleading for omitting the issue of liability.
C. Federal Law
We next address whether the ballot summary will mislead voters regarding the interplay between the proposed amendment and federal law. Specifically, the ballot summary explains that the proposed amendment “[a]pplies only to Florida law” and “[d]oes not authorize violations of federal law.” The opponents are certainly correct that these statements, standing alone, do not explicitly inform voters that any use and possession of marijuana, including the medical use of marijuana that would be authorized by the amendment, is currently prohibited by federal law.
However, the statements in the ballot summary are substantially similar in meaning to the proposed amendment’s text, which provides that “[njothing in this law section [sic] requires the violation of federal law or purports to give immunity under federal law.” By asserting that the ballot summary should include language informing the voters that marijuana possession and use is currently prohibited under federal law, the opponents are actually asserting that the ballot summary should include language that is not in the proposed amendment itself. This is not required.
This Court has also never required that a ballot summary inform voters as to the current state of federal law and the impact of a proposed state constitutional amendment on federal statutory law as it exists at this moment in time. Moreover, the statements in the ballot summary are legally accurate. Therefore, the ballot summary’s discussion of federal law is not “so misleading as to clearly and conclusively violate section 101.161.” Legislative Dist. Boundaries, 2 So.3d at 187.
D. Remaining Claims
Finally, the opponents assert that the ballot title and summary are affirmatively misleading because voters are not advised that there will allegedly be no age limit for marijuana use and no requirement that physicians consult parents before authorizing marijuana use for minors; that the definition of “caregiver” is inconsistent with its common meaning and use under the Florida Statutes; and that the ballot summary fails to disclose the amendment’s effect on two existing provisions within the Florida Constitution’s Declaration of Rights: the right of access to courts and the right of access to public records.
These issues, however, do not involve the chief purpose of the amendment or even a significant effect that would result *809 from the amendment if passed. See § 101.161(1), Fla. Stat. (“The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.”). Consequently, these allegations do not warrant striking the proposal from the ballot. See Advisory Op. to Att’y Gen. re Prohibiting Pub. Funding of Political Candidates’ Campaigns, 693 So.2d 972, 975 (Fla.1997) (“[T]he title and summary need not explain every detail or ramification of the proposed amendment.”). Moreover, we note that these allegations are largely speculative and in some instances—such as the right of access to courts—actually inaccurate as to the effect of the proposed amendment.
For all these reasons, we conclude that the ballot title and summary comply with the clarity requirements of section 101.161.
V. FINANCIAL IMPACT STATEMENT
Although neither the proponent of the amendment nor the opponents assert that the Financial Impact Statement is misleading, this Court still has an independent obligation to review the statement to ensure that it is clear and unambiguous and in compliance with Florida law. See Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amend. of Local Gov’t Comprehensive Land Use Plans, 963 So.2d 210, 214 (Fla.2007) (explaining that “the Florida Constitution mandates that the advisory opinion address the financial impact statement portion of the initiative process”). Article XI, section 5(c), of the Florida Constitution states that “[t]he legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to [article XI,] section 3.” Section 100.371(5)(a), Florida Statutes, provides that this Financial Impact Statement must address “the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative,” and section 100.371(5)(c)2., Florida Statutes, requires the Financial Impact Statement to be “clear and unambiguous” and “no more than 75 words in length.”
This Court has explained that its “review of financial impact statements is narrow.” Water & Land Conservation, 123 So.3d at 52. This Court only addresses “whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments.” Land Use Plans, 963 So.2d at 214.
Here, the Financial Impact Statement complies with the word limit and addresses only the subject of the estimated increase or decrease in revenues and costs to state and local governments. It plainly states that the increased costs associated with additional regulatory and enforcement activities could not be determined and that fees would offset at least a portion of these increased costs. The Financial Impact Statement also plainly explains that the Financial Impact Estimating Conference could not determine the change in revenue because it could not predict the extent to which medical marijuana would be exempt from taxation. Accordingly, we hold that the Financial Impact Statement complies with section 100.371(5), Florida Statutes. See Advisory Op. to Att’y Gen. re Fla. Growth Mgmt. Initiative Giving Citizens the Right to Decide Local Growth Mgmt. Plan Changes, 2 So.3d 118, 124 (Fla.2008) (“Overall, the financial impact *810 statement is necessarily indefinite but not unclear or ambiguous.”).
VI. CONCLUSION
Based on the foregoing, we conclude that the initiative petition and ballot title and summary satisfy the legal requirements of article XI, section 3, of the Florida Constitution, and section 101.161(1), Florida Statutes. In addition, the Financial Impact Statement is in compliance with section 100.371(5), Florida Statutes. We therefore approve the proposed amendment and Financial Impact Statement for placement on the ballot.
It is so ordered.
PARIENTE), LEWIS, QUINCE, and PERRY, JJ., concur.
POLSTON, C. J., dissents with an opinion in which CANADY, J., concurs.
CANADY, J., dissents with an opinion in which POLSTON, C.J., concurs.
LABARGA, J., dissents with an opinion.