# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

No. 1D2024-1651

———————————————

STATE OF FLORIDA, AGENCY FOR
PERSONS WITH DISABILITIES,

    Appellant,

    v.

SALLY TOAL,

    Appellee.

———————————————

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

February 26, 2025

RAY, J.

The Agency for Persons with Disabilities appeals a nonfinal order in which the trial court found that noneconomic damages are available as a form of relief under the public sector Whistleblower's Act. Because the Whistleblower's Act does not clearly and unequivocally waive sovereign immunity to authorize the recovery of such damages, we reverse.

I

After Sally Toal was fired from her job with the Agency for Persons with Disabilities, she sued her former employer alleging that she was subjected to whistleblower retaliation. As part of her

requested relief, she claimed entitlement to compensation for noneconomic damages, including emotional pain and suffering, loss of the capacity for the enjoyment of life, and other intangible losses.

The Agency moved to dismiss her claim for noneconomic damages, arguing that they were barred by sovereign immunity. As it does on appeal, the Agency argued that the Whistleblower's Act does not contain an express, unequivocal waiver of immunity authorizing the award of noneconomic damages, nor are such damages included in the statute's enumerated categories of relief. Although the Third District Court of Appeal held in *Iglesias v. City of Hialeah*, 305 So. 3d 20 (Fla. 3d DCA 2019), that such damages could be recovered because the Whistleblower's Act did not expressly exclude them, the Agency argued that the opinion did not address sovereign immunity or reconcile its holding with the well-established principle that a waiver of immunity cannot be found by inference or implication.

But the trial court relied on *Iglesias* to deny the Agency's motion, and the Agency has appealed. We have jurisdiction. *See* Fla. R. App. P. 9.130(a)(3)(F)(iii).

II

The common law doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its consent, "has been a fundamental tenet of Anglo-American jurisprudence for centuries and is based on the principle that 'the King can do no wrong.' " *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005). This doctrine is the law of Florida through the Legislature's adoption of the English common law. *Id.* (citing § 2.01, Fla. Stat.).

As the Florida Supreme Court has explained, there are several policy reasons supporting sovereign immunity, including (1) "the preservation of the constitutional principle of separation of powers"; (2) "the protection of the public treasury"; and (3) "the maintenance of the orderly administration of government." *Id.* (internal citations omitted). Suffice it to say, "sovereign immunity

is the rule, rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984).

Despite the broad protections of the doctrine, the people, through their elected representatives, can consent to suit by waiving the state's sovereign immunity. *See* art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."). But given the interests at stake, "any waiver of sovereign immunity must be clear and unequivocal," and thus "waiver will not be found as a product of inference or implication." *Am. Home Assurance Co.*, 908 So. 2d at 472; *see also Spangler v. Fla. State Tpk. Auth.*, 106 So. 2d 421, 424 (Fla. 1958) (explaining that "the immunity of the sovereign is a part of the public policy of the state" and "enforced as a protection of the public against profligate encroachments on the public treasury").

Against this backdrop, we turn our attention to the public sector Whistleblower's Act, sections 112.3187–112.31895, Florida Statutes (2021). "Whether a legislative enactment has waived the defense of sovereign immunity is a pure question of law reviewed de novo." *Fla. Fish & Wildlife Conservation Comm'n v. Hahr*, 326 So. 3d 1165, 1167 (Fla. 1st DCA 2021) (quoting *State, Dep't of Elder Affs. v. Caldwell*, 199 So. 3d 1107, 1109 (Fla. 1st DCA 2016)).

A

The Whistleblower's Act prohibits state agencies from taking adverse personnel action against employees in retaliation for disclosing information protected by the Act. § 112.3187(4)(a), Fla. Stat. There are several prescribed forms of relief:

> **(9) Relief.**—In any action brought under this section, the relief must include the following:
>
> (a) Reinstatement of the employee to the same position held before the adverse action was commenced, or to an equivalent position or reasonable front pay as alternative relief.

3

(b) Reinstatement of the employee's full fringe benefits and seniority rights, as appropriate.

(c) Compensation, if appropriate, for lost wages, benefits, or other lost remuneration caused by the adverse action.

(d) Payment of reasonable costs, including attorney's fees, to a substantially prevailing employee, or to the prevailing employer if the employee filed a frivolous action in bad faith.

(e) Issuance of an injunction, if appropriate, by a court of competent jurisdiction.

(f) Temporary reinstatement to the employee's former position or to an equivalent position, pending the final outcome on the complaint, if an employee complains of being discharged in retaliation for a protected disclosure and if a court of competent jurisdiction or the Florida Commission on Human Relations, as applicable under s. 112.31895, determines that the disclosure was not made in bad faith or for a wrongful purpose or occurred after an agency's initiation of a personnel action against the employee which includes documentation of the employee's violation of a disciplinary standard or performance deficiency. This paragraph does not apply to an employee of a municipality.

§ 112.3187(9)(a)–(f), Fla. Stat.

Noneconomic damages are not specified as a form of relief under the Whistleblower's Act, full stop. Toal does not argue otherwise.

To be sure, the statute addresses compensation for objectively verifiable monetary losses (read: economic damages) but does not mention subjective, non-monetary losses (read: noneconomic damages). *Id.* at (c). Instead, when describing compensation for "other lost remuneration caused by the adverse [employment] action," it first lists wages and benefits—things of value routinely payable or provided to an employee as part of the employment

4

relationship. That does not include or even suggest compensation for noneconomic damages such as pain, suffering, and emotional distress. *See In re Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 801 (Fla. 2014) (explaining that when general words in a statute follow specific words or phrases, the meaning of the general words are construed as being restricted to include only those of the same kind or class of those specifically mentioned); *Sun Coast Int'l Inc. v. Dep't of Bus. Regul., Div. of Fla. Land Sales, Condo. & Mobile Homes*, 596 So. 2d 1118, 1121–22 (Fla. 1st DCA 1992) (applying the maxim of *ejusdem generis* to conclude that general statutory language authorizing agency action was limited by the specific language immediately preceding it, and rejecting an argument that the general language implied the agency could provide broader relief).

B

By contrast, other employment laws show that when the Legislature intends to include noneconomic damages as a form of relief, it expressly says so. *See, e.g.*, § 760.11(5), Fla. Stat. (authorizing the award of "damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages" in the Florida Civil Rights Act); § 112.0455(15)(a)2., Fla. Stat. (authorizing an award of "noneconomic damages provided that damages shall be limited to the recovery of damages directly resulting from injury or loss caused by each violation of this section" in the Drug-Free Workplace Act, which applies to state agencies and their employees).

Tellingly, Florida's private sector Whistleblower's Act authorizes additional relief in the form of "[a]ny other compensatory damages allowable at law," which has been found to include noneconomic damages. § 448.103(2)(e), Fla. Stat.; *see Aery v. Wallace Lincoln-Mercury, LLC,* 118 So. 3d 904, 913 (Fla. 4th DCA 2013) (finding the phrase "any other compensatory damages allowable at law" authorized noneconomic compensatory damages under the private sector act). But the Legislature chose not to include similar language in the public sector version. That omission further shows that noneconomic damages cannot be recovered under the public sector act. "In the past, we have pointed to language in other statutes to show that the Legislature 'knows

5

how to' accomplish what it has omitted in the statute in question." *Cason v. Fla. Dep't of Mgmt. Servs.*, 944 So. 2d 306, 315 (Fla. 2006) (quoting *Rollins v. Pizzarelli*, 761 So. 2d 294, 298 (2000)) (reasoning that the omission of a provision classifying the State as a taxpayer from the statute in question was "especially significant in light of the overriding principle that any wavier of the State's immunity from ad valorem taxation must be clear and direct").

C

Nevertheless, the trial court believed it was bound to follow *Iglesias v. City of Hialeah*, 305 So. 3d 20 (Fla. 3d DCA 2019), which held that the Whistleblower Act's "language is a floor, rather than a ceiling," on the types of relief a party may seek. *Id.* at 22. Because the statute dictates that relief "must include" rather than "must only include" the enumerated categories of relief, the appellate court concluded that an employee could recover noneconomic damages. *Id.*

However, *Iglesias* does not mention sovereign immunity and there is no indication in the opinion that the issue was even raised as a defense in that case. Instead, it reasoned that because the statute "does not expressly exclude other recoverable damages," then other forms of relief may be available. *Id.* But as we have already explained, a waiver of sovereign immunity cannot be inferred or implied, *Am. Home Assurance Co.*, 908 So. 2d at 472, and "[n]o decision is authority on any question not raised and considered, although it may be involved in the facts of the case." *State ex rel. Helseth v. Du Bose*, 128 So. 4, 6 (Fla. 1930). For the same reasons, *Iglesias*'s reliance on *O'Neal v. Florida A&M University ex rel. Board of Trustees for Florida A&M University*, 989 So. 2d 6 (Fla. 1st DCA 2008), is also unavailing. That decision addressed only the right to a jury trial under the Whistleblower's Act, never mentioned sovereign immunity, and its comments about forms of compensatory relief are dicta. *Id.* at 14 n.5 (reasoning that the Act does not preclude compensatory relief other than those enumerated by the text). Thus, *Iglesias* is not persuasive authority on this issue and cannot support the trial court's decision.

## D

One final point is worth noting. We have considered Toal's argument that, as a remedial statute, the Whistleblower's Act should be interpreted liberally in her favor. But this so-called remedial purpose canon is of "dubious value." *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1195 (11th Cir. 2019); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 64, at 364–67 (addressing "[t]he false notion that remedial statutes should be liberally construed" and criticizing the canon as "needlessly invit[ing] judicial lawmaking"). Indeed, "[e]very statute proposes, not only to achieve certain ends, but also to achieve them by particular means—and there is often a considerable legislative battle over what those means ought to be." *Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 136 (1995).

At any rate, we do not employ scale-tipping cannons in the absence of statutory ambiguity. Here, there is none. The Legislature delineated the precise forms of relief that must be awarded to a prevailing plaintiff. And it chose not to include uncapped noneconomic damages within this comprehensive framework.

Even if ambiguity were hypothetically acknowledged, there would be no valid waiver of sovereign immunity. Sovereign immunity can be waived only through statutory language that is clear and unequivocal, as it is "the province of the political branches, not the courts, to weigh the costs and benefits of exposing the . . . government to civil litigation." *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019).

## III

Because the Whistleblower's Act does not clearly and unequivocally waive sovereign immunity to authorize the recovery of noneconomic damages, the trial court erred by denying the Agency's motion to dismiss Toal's claim for such relief. We thus reverse the order under review and remand for further proceeding*s*.

B.L. THOMAS and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Miriam R. Coles and Dawn M. McMahon of Henry Buchanan, P.A., Tallahassee, for Appellant.

Marie A. Mattox and Ashley N. Richardson of Marie A. Mattox, P.A., Tallahassee, for Appellee.

Richard E. Johnson of the Law Office of Richard E. Johnson, Tallahassee, for Amicus Curiae National Employment Lawyers Association, Florida Chapter.